# EXHIBIT C

 **GEICO**®

One GEICO Center
Macon, GA 31295-0001

**Telephone: 1-866-272-5192**          **Policy Number:** ▮▮▮▮▮▮
**Fax: 1-855-238-8055**

10/06/17



Dear GEICO Policyholder,

Enclosed you will find renewal papers for your GEICO Personal Umbrella Policy. You can feel comfortable knowing that you and your loved ones have continued protection from the catastrophic legal defense costs or losses that could easily result from an unexpected claim.

Please take a few minutes now to review the provisions of your policy. It's very important that you understand your coverages and make sure your policy still meets your needs. If your circumstances have changed, such as you purchased a boat, or added a home office, or changed your homeowner insurance company, please let us know. If you have any questions, or want to make changes, please call us at 1-866-272-5192.

GEICO works very hard to keep rates as low as possible. We vigorously defend against frivolous lawsuits, fight fraudulent claims, closely scrutinize medical bills and reports, and actively participate in efforts to promote home, highway and vehicle safety.

However, all our efforts mean little without your help. Please drive defensively, and don't allow cell phones and other distractions to cause you to lose focus on the critical driving task. Always remember to wear your seat belt, and make sure your passengers do the same. Obey the speed limits, and of course, don't drink and drive.

Do everything you can to make sure your home is safe and secure.

Consider increasing the limits of your umbrella policy up to $10 million if you believe you need increased coverage. If you qualify, you may find the additional premium a worthwhile investment in protecting your assets.

We appreciate your business and will continue to deliver the same high quality service that you have come to expect from GEICO. Our round-the-clock service is there when you need to file a claim, update your policy or just ask a question. Call our experienced representatives at 1-866-272-5192 any time. Just have your policy number handy and we'll be more than happy to help you.

Sincerely,

*O. M. Nicely*

O. M. Nicely
President



**GOVERNMENT EMPLOYEES INSURANCE COMPANY**

ONE GEICO PLAZA, WASHINGTON, D.C. 20076

<div style="border">

**GEICO'S PERSONAL
UMBRELLA POLICY**
Renewal Declarations

</div>

| POLICY NO ████████ |
|---|

Policy Period From 11/26/17 To 11/26/18                    PHC RE-KS-  10/06/17

**INSURED NAME AND ADDRESS**



THIS POLICY IS EFFECTIVE AT 12:01 A.M. STANDARD TIME AT THE RESIDENCE OF THE INSURED. INSURANCE IS PROVIDED WITH RESPECT TO THE FOLLOWING COVERAGES AND LIMITS SPECIFIED WHERE A PREMIUM IS STATED, SUBJECT TO ALL CONDITIONS OF THIS POLICY.

**I.   LIMIT OF LIABILITY**          $1,000,000

**II.   RETAINED LIMIT**             $500

| III.  RATING INFORMATION | IV.  PREMIUM | V.  MINIMUM REQUIRED LIMITS OF PRIMARY INSURANCE |
|---|---|---|
| AUTOMOBILE<br>2014 HYUNDAI | $    54.00 | $ 300,000/300,000/100,000 |
| PRIMARY RESIDENCE<br>████████████████ | $    53.00 | $ 300,000 |
| UNINSURED MOTORIST | $    55.00 | $ 300,000/300,000 |
| TOTAL PREMIUM | $   162.00 | |

HU1 (6-80)

**GOVERNMENT EMPLOYEES INSURANCE COMPANY**
**ONE GEICO PLAZA, WASHINGTON, D.C. 20076**

POLICY NO ████████                                    PHC RE-KS-  10/06/17

### FORMS AND ENDORSEMENTS

| | | |
|---|---|---|
| PPA1 | (07-00) | Personal Umbrella Liability |
| PPE11 | (07-00) | Policy Amendment |
| PPE1KS | (10-08) | Policy Amendment |
| PPE1VS | (05-14) | Ride Sharing Amendment |
| PPE2KS | (04-01) | UM/UIM Amendment |

**IMPORTANT MESSAGES**

Kansas law provides that convictions for a speed violation of 1-10 mph over the maximum posted speed limit between 55-70 mph, prior to 7/1/2011, or posted speed of 55-75 mph after 7/1/2011, or for a speed violation of 1-6 mph over the maximum posted speed of 30-54 mph, do not need to be reported to your insurance company nor shall your insurance company use the information to determine your rate or whether to cancel your policy.

Enclosed are your renewal papers.

**OFFICE USE ONLY**

HU1 (6-80)                                                                                    (B1)

# GEICO'S PERSONAL UMBRELLA POLICY

## PERSONAL UMBRELLA LIABILITY INSURANCE AGREEMENT

*We* provide the insurance in this policy in return for payment of the premium when due and compliance with the policy provisions.

**PART I - DEFINITIONS**

In this policy, "*you*" and "*your*" mean the *insured* named in the declarations and spouse if a resident of *your* household. "*We*", "*us*", and "*our*" mean the Government Employees Insurance Company. Other words are defined as follows:

1. **"Auto"** means:

   (a) an owned or non-owned auto as defined in *your* primary automobile liability insurance policy; or
   (b) any other vehicle described in the policy *declarations*.

2. **"Business"** includes full-time or part-time trades, professions or occupations.

3. **"Business property"** means:

   (a) any property on which business is conducted; and
   (b) any property containing more than two residential units.

4. **"Damages"** means the total of:

   (a) damages an *insured* must pay:

      (1) legally; or
      (2) by agreement with *our* written consent;

   because of *personal injury* or *property damage* covered by this policy.

   (b) reasonable expenses an *insured* incurs at *our* request in the:

      (1) investigation;
      (2) defense; and
      (3) settlement

   of a claim or suit because of *personal injury* or *property damage* covered by this policy.

   (c) **"Damages"** does not include:

      (1) salaries of an *insured's* regular employees; or
      (2) expenses payable under Part V. of this policy; or
      (3) punitive or exemplary damages.

5. **"Day care"** means the care of persons other than an *insured* or relative, performed by an *insured* or an employee of an *insured* for monetary or other compensation. Mutual exchange of *day care* services is not considered as compensation.

6. **"Declarations"** wherever used in this policy, means the declarations page or pages for this policy.

7. **"Insured"** means:

   (a) *You* and *your* spouse if a resident of *your* household; but with respect to an *auto you* do not own or lease which is furnished for regular use by *you* or *your* spouse, coverage applies only if the *auto* is insured by a primary auto policy.

   (b) Relatives residing in *your* household as well as a household resident under age 21 in the care and custody of *you* or *your* spouse. With respect to an *auto*, such person is an *insured* only if the *auto* is insured by a primary policy issued by *us*.

   (c) Persons not defined in 7.(a). or 7.(b). above, if using an *auto* or *watercraft* owned or furnished for the regular use of a person defined in 7.(a). or 7.(b). above, provided the use is with permission. With respect to an *auto*; such person is an *insured* only if the auto is insured by a primary policy issued by *us*.

   (d) Any person or organization legally responsible for the acts or omissions of a person for whom coverage is afforded under the policy, while that person is using an *auto* or *watercraft* insured by a primary policy.

   (e) Any person or organization legally responsible for damages caused by animals owned by *you*, *your* spouse, and residents of *your* household who are relatives or persons under *your* care and custody.

   (f) The following are not **"insureds"**:

      (1) the owner or lessor (or their agents or employees) of:

         (i) an *auto*;
         (ii) recreational vehicle; or
         (iii) *watercraft*

      loaned to or hired for use by *you* or on *your* behalf.

Case 4:22-cv-00082-FJG   Document 1-3   Filed 04/07/21   Page 5 of 21

(2) a person other than an *insured* shown in 7.(a) or 7.(b) above using an *auto* or *water craft* while employed in the business of:

    (i)   selling;
    (ii)  servicing;
    (iii) repairing;
    (iv) maintaining;
    (v)  parking;
    (vi) docking;
    (vii) mooring; or
    (viii) storing

*autos* or *watercraft*. This includes a person other than an *insured* or organization employing or engaging a person using the *autos* or *watercraft* in the above activities.

(3) a person or organization with custody of animals owned by an *insured* in 7.(a) or 7.(b) above, in the course of any business or without the consent of an *insured* in 7.(a) or 7.(b) above.

As regards 7.(b), 7.(c) and 7.(d) above, if the *auto* is not an owned auto or non-owned auto as defined in *your* primary automobile liability insurance policy, but is described on this policy's *declarations*, the required *primary insurance* need not be issued by *us*.

**8.** **"Occurrence"** means an accident or event, including a continuous or repeated exposure to conditions which results in *personal injury* or *property damage* neither expected or intended by *you*.

**9.** **"Personal injury"** means:

(a) mental or bodily injury, shock, sickness, disease or death including care and loss of services; or

(b) injury arising out of:

    (i)  false arrest, detention or imprisonment, or malicious prosecution; or
    (ii) libel, slander, defamation, humiliation, or a publication or utterance in violation of a person's right of privacy not arising out of any business pursuit of any *insured*; or
    (iii) wrongful entry or eviction, or other invasion of the right of private occupancy.

**10.** **"Personal watercraft"** means *watercraft* specifically designed to hold four or fewer persons and propelled by a jetpump and/or impeller.

**11.** **"Primary insurance"** means insurance:

(a) for which a minimum required liability limit is shown on the *declarations*; and
(b) which is payable on behalf of an *insured* for liability for *personal injury* or *property damage*; and
(c) which must be maintained as a condition of this policy.

**12.** **"Property damage"** means damage to or loss of use of tangible property.

**13.** **"Retained limit"** is the amount of any *damages* an *insured* must pay for any *occurrence* resulting in *personal injury* or *property damage* which is not covered by *your primary insurance* . The *retained limit* is as shown in item II of the *declarations*.

**14.** **"Watercraft"** means a vessel intended for navigation on water. **"Watercraft"** as used in this policy does not include *personal watercraft* as defined in this policy.

**Any terms that are not specifically defined in this policy will follow the definitions of** *your* **primary insurance policy** .

**PART II - COVERAGE**

    *We* pay *damages* on behalf of an *insured* arising out of an *occurrence*, subject to the terms and conditions of this policy.

**PART III - EXCLUSIONS**

*We* do not cover *damages* resulting from:

**1.** *Personal injury* to a person eligible for payments voluntarily provided by an *insured* or required to be provided under:

(a) workers' compensation laws:
(b) non-occupational disability laws; or
(c) occupational disease laws.

**2.** The ownership, maintenance, use, loading or unloading of any aircraft. Model or hobby aircraft are not excluded if not designed to carry people or cargo.

**3.** The rendering of or failure to render professional services.

**4.** Acts committed by or at an *insured's* direction with intent to cause *personal injury* or *property damage*. This exclusion does not apply to *personal injury* or *property damage* resulting from an act committed by an *insured* with reasonable and legally permissible force to protect persons and property from injury or damage. This exclusion also does not apply to Part I., Item 9(b).

**5.** *Business* pursuits or *business property* of an *insured* unless covered by *primary insurance* described in the *declarations. Our* coverage is no broader than the *primary insurance* except for *our* liability limit.

**6.** The ownership, maintenance, use, loading or unloading of any *watercraft* owned by an *insured*. This exclusion does not apply:

(a) if on the policy's effective date, the *watercraft* is covered by *primary insurance* and a premium is shown in the *declarations*; or

(b) if *we* are informed within 30 days after the *watercraft* is obtained and is covered by *primary insurance* and an additional premium is paid to *us*; or

(c) while the **watercraft** is stored.

A premium need not be shown in the **declarations** if the required **primary insurance** is a Homeowners policy.

**7. Property damage** to:

(a) property owned by an **insured**; or
(b) aircraft or **watercraft** rented to, used by, or in the care of an **insured**; or
(c) property rented to, used by, or in the care of an **insured**.

**8. Personal injury** or **property damage** for which an **insured** under this policy is also insured under a nuclear energy liability policy. This includes a policy which would cover **damages** but for its termination because the limits of liability were exhausted. A nuclear energy liability policy is a policy issued by:

(a) Nuclear Energy Liability Insurance Association;
(b) Mutual Atomic Energy Liability Underwriters;
(c) Nuclear Insurance Association of Canada

or any of their successors.

**9.** Liability arising from serving on a board of directors, or as an officer of an organization. This exclusion does not apply if the service is performed for a charitable, religious or civic non-profit organization and for which the **insured** receives no compensation.

**10. Personal injury** to any **insured**.

**11.** The transmission of a communicable disease by an **insured**.

**12. Personal injury** or **property damage** resulting from an uninsured or underinsured motorist claim unless a premium is shown for the uninsured or underinsured motorist coverage in the declarations.

**13. Day care** services unless covered by **primary insurance**.

**14.** Sexual molestation, corporal punishment or physical or mental abuse inflicted upon any person by or at the direction of an **insured**, an **insured's** employee or any other person at an **insured's** direction.

**15.** The use of any motor vehicle or **watercraft**, other than a sailboat, in preparing for or participating in any official or prearranged speed contest.

**16.** An award of punitive or exemplary damages.

**17.** War as defined in the underlying auto policy.

**18.** The possession, use, sale or manufacture by any person of a controlled substance as defined by the Federal Food and Drug Law at 21 U.S.C.A., sections 811 and 812. This exclusion does not apply to the legitimate use of prescription drugs as prescribed by a properly licensed medical practitioner.

**19.** The escape of fuel from a fuel system including storage tanks located under or above the ground.

**20.** Any of the following causes:

(a) the eating of paint that has lead in it;
(b) the eating of paint that has lead compounds in it;
(c) the inhalation of paint that has lead in it;
(d) the inhalation of paint that has lead compound in it;
(e) radon or any other substance that emits radiation; or
(f) the discharge, disposal, release or escape of:

(i) vapors or fumes; or
(ii) gas or oil; or
(iii) toxic chemicals, liquids or gas; or
(iv) waste materials; or
(v) irritants, contaminants or pollutants

including liability imposed by law.

**21.** The ownership, maintenance, use, loading or unloading of **personal watercraft**.

**22.** The ownership, maintenance, use, loading or unloading of a snowmobile.

**PART IV - LIMITS OF LIABILITY**

Regardless of the number of **insureds**, claims or injured persons, the most **we** pay as **damages** resulting from one **occurrence**, including **damages** for care and loss of services, shall not exceed the amount in Item 1. of the **declarations**, subject to the following:

**1.** If both **primary insurance** and this policy cover an **occurrence**, **we** pay only those **damages** which exceed the liability limits in Item V. of the **declarations**, or any applicable primary policy, whichever is greater.

**2.** If **primary insurance** is not in force at the time of loss, or its liability limits are less than shown in Item V. of the **declarations, we** pay only those **damages** which exceed the liability limits in Item V. of the **declarations**.

**3.** If a primary insurer does not pay because of:

(a) bankruptcy; or
(b) insolvency; or
(c) an **insured's** failure to comply with a provision of **primary insurance**;

**we** pay only those **damages** which exceed the liability limits in Item V. of the **declarations**, or any applicable primary policy, whichever is greater.

**4.** If an **occurrence** results in **personal injury** or **property damage**, and:

(a) is not covered under the terms and conditions of **your primary insurance**, but

(b) is covered by this policy,

**we** pay only those damages which exceed **your retained limit**.

This insurance applies separately to each *insured*. This provision shall not increase our liability limit for one *occurrence*.

## PART V- DEFENSE OF SUITS NOT COVERED BY OTHER INSURANCE

1. If the required *primary insurance*:

   (a) is in force but does not cover *personal injury* or *property damage* due to the nature of the claim against *you*, and this policy does provide coverage, *we* will provide defense of suits in excess of the *retained limit*.

   (b) is in force but does not cover *personal injury* or *property damage* for any other reason, and this policy does provide coverage, *we* have the right to provide defense. But *we* are not obligated to defend unless the *personal injury* or *property damage* alleged in the suit exceeds the required limit of *primary insurance* shown in Item 5. of the *declarations*.

2. When *we* provide defense, *we* will:

   (a) defend an *insured* against a claim or suit for damages arising out of an *occurrence*. *We* may investigate and settle a claim or suit *we* feel is appropriate;

   (b) pay costs taxed against an *insured* in a suit *we* defend;

   (c) pay interest accruing after a judgment is entered in a suit *we* defend; *our* duty to pay interest ends when *we* offer to pay that part of the judgment which does not exceed *our* liability limit;

   (d) pay premiums on bonds required in a suit *we* defend; however, *we* will pay premiums for appeal bonds only from judgments from which *we* authorize an appeal. The bond amounts shall not exceed *our* liability limit. We pay the cost of bail bonds required of an *insured* because of an accident or a traffic law violation. *We* are not required to apply for or furnish bonds;

   (e) pay reasonable expenses an *insured* incurs at *our* request in assisting *us* in the investigation or defense of a claim or suit. Expenses include actual loss of earnings (not other income) up to $100 per day or $5,000 total.

   *We* pay amounts incurred, except settlement of claims or suits for *damages*, in addition to *our* liability limit.

   An *insured* shall promptly repay *us* for *damages we* paid within the *retained limit*.

## PART VI - CONDITIONS

1. **Duties after Occurrence, Claim or Suit**

   (a) If an *occurrence* is likely to involve us under this policy an *insured* shall promptly advise us of:

   (1) how, when and where the *occurrence* took place; and

   (2) names and addresses of the injured and all witnesses.

   (b) If information regarding a claim is received or if legal action is begun, an *insured* must immediately send *us* a copy of every:

   (1) notice;
   (2) demand;
   (3) report;
   (4) summons; or
   (5) other legal papers.

   (c) An *insured* must cooperate with *us* in the investigation, defense and settlement of a claim or suit.

   (d) An *insured* must comply with the policy provisions of the *primary insurance*.

2. **Defense and Settlement.** Except as provided in Part V., *we* are not required to take charge of the investigation, defense or settlement of a claim or suit. *We* have the right at any time to join an *insured* or the primary insurers in the investigation, defense and settlement of a claim or suit. If the *primary insurance* limit is paid, *we* have the option to defend a claim or suit. *We* may investigate and settle a claim or suit which *we* feel is appropriate.

3. **Appeals**. *We* may appeal a judgment in excess of the applicable *primary insurance* limit or the *retained limit. We* pay all:

   (a) costs;
   (b) taxes;
   (c) expenses; and
   (d) interest

   for which an *insured* is legally liable and which are not covered by a *primary insurance* policy. *Our* liability for damages does not exceed *our* liability limit for one *occurrence* plus the cost and expense of the appeal.

4. **Suit Against Us**. No action shall be brought against *us*:

   (a) unless an *insured* has complied with the policy provisions; and

   (b) until the obligation of an *insured* has been determined by trial and judgment or by agreement signed by *us*.

   No one shall have a right to join *us* as a party to an action against an *insured*.

5. **Other Insurance**. This insurance is excess over any insurance which covers a loss under:

   (a) *your primary insurance*; or
   (b) any other insurance policies.

**6. Our Right To Recover Payment** . If payment is made by *us*, *we* will join an *insured* and any primary insurer in exercising an *insured's* rights of recovery against any party. An *insured* shall not prejudice such rights after loss. Recoveries shall be made in the following order:

    (a) repay the parties (including an *insured*) who paid in excess of *our* liability limit;

    (b) repay *us* the amount *we* paid; and

    (c) repay the parties (including an *insured*) to whom this insurance is excess, if they are entitled to any remainder.

A different distribution may be made to settle a claim or suit if all parties agree.

    Reasonable expenses of obtaining recovery shall be divided among all parties in the ratio of their losses for which recovery is sought.

**7. Assignment.** *Your* rights and duties under this policy shall not be assigned without *our* written consent.

**8. Policy Period and Territory** . *We* cover *personal injury* and *property damage* which takes place anywhere during the time this policy is in force. If *you* travel outside the United States, *you* must maintain the equivalent of *your* primary insurance. *We* pay only those *damages* which exceed the liability limits in Item V of the *declarations*, or any applicable primary policy, whichever is greater.

**9. Termination.**

    (a) Cancellation

        *You* may cancel this policy by returning it to *us* or by notifying *us* in writing of the cancellation date. Any return premium will be calculated on a pro-rate basis.

        *We* may cancel this policy for non-payment of premium by notifying *you* in writing at least 10 days in advance.

        If this policy is not a renewal, and has been in effect less than 60 days, *we* may cancel for any reason by notifying *you* in writing at least 30 days in advance.

        If this policy is a renewal, or has been in effect 60 days or more, *we* may cancel:

        (1) if there has been a material misrepresenta- tion of fact, made by *you* or with *your* knowledge, which if known to *us* would have caused *us* not to issue the policy; or

        (2) if the risk has changed substantially since the policy was issued. Substantial change in risk includes failure to maintain the required *primary insurance*; or

        (3) If *you* fail to provide *us* with renewal, underwriting and rating data as *we* may require.

If this policy is cancelled, any return premium will be refunded within a reasonable time after the cancellation date. Payment or tender of unearned premium is not a condition of cancellation. When *we* cancel, the return premium will be pro-rated.

    (b) Non-Renewal

        If *we* choose not to renew this policy, *we* will notify *you* in writing at least 30 days before the end of the policy period.

    (c) *Our* notice may be delivered or mailed to you at the address in the *declarations*.

    (d) Proof of mailing is sufficient proof of notice.

    (e) If any provision of 9.(a), (b), (c), or (d) above are in conflict with the law in *your* state, *we* will comply with that law.

**10. Changes.** The terms of this policy may not be changed or waived except by endorsement by *us*.

**11. Concealment or Fraud.** *We* do not provide coverage for an *insured* who purposely conceals or misrepresents any material fact or circumstance relating to this insurance.

**12. Death.** If *you* or a resident of *your* household dies, *we* cover:

    (a) with respect to *your* property, the person in temporary custody of the property until a legal representative is appointed.

    (b) the legal representative of the deceased only but with respect to the property of the deceased covered under the policy at the time of death.

**13.** Any terms of this policy in conflict with the statutes of *your* state are amended to conform to those statutes.

**14.** *You* will maintain *your primary insurance* and notify *us* of any changes in *your primary insurance* within 30 days.

**15.** In the event of a loss covered by this policy, *we* pay only those *damages* which exceed the limits of liability shown in Item V. of the *declarations* or the limits of liability shown in any applicable primary policy, whichever is greater.

**16. Newly Acquired Property**

    *You* agree with *us*, as a condition of coverage under this policy, to:

    (a) notify *us* within 30 days of the date *you* acquire:

        (1) property;

        (2) *autos*; or

        (3) *watercraft* or other recreational vehicles.

Further, coverage shall not be afforded under this policy unless:

(a) the newly acquired or additional:

    (1) property;
    (2) **autos**; or
    (3) **watercraft** or other recreational vehicles

are indicated on the **declarations** and **primary insurance** is maintained with a minimum limit of liability equal to the limits under Section V. of the **declarations**.

W. C. E. Robinson
Secretary

O. M. Nicely
President

Government Employees Insurance Company
HOME OFFICE - 5260 Western Avenue
Chevy Chase, Maryland 20815-3799

# GEICO'S PERSONAL UMBRELLA POLICY AMENDMENT

*Your* policy is amended as follows:

**PART III EXCLUSIONS**

Exclusion 20. is deleted.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President

GOVERNMENT EMPLOYEES INSURANCE COMPANY
HOME OFFICE - 5260 Western Avenue
Chevy Chase, Maryland 20815-3799


*Your* policy is amended as follows:

## PART I - DEFINITIONS

Definition **7. Insured** is revised as follows:

*Insured* means:

(a) **You** and *your* spouse if a resident of *your* household. With respect to a motor vehicle, such person is an **insured** only if the motor vehicle meets the definition of **auto** in this policy and is insured by a primary auto policy.

(b) *Relatives* residing in *your* household as well as a household resident under age 21 in the care and custody of *you* or *your* spouse. With respect to a motor vehicle, such person is an **insured** only if the motor vehicle is insured by a primary policy and shown on the **declarations** of this Personal Umbrella Policy.

(c) Persons not identified in **7.**(a). or **7.**(b). above, if using an **auto** or **watercraft** owned or furnished for the regular use of a person defined in **7.**(a). or **7.**(b). above, provided the use is with permission. With respect to an **auto,** such person is an **insured** only if the **auto** is insured by a primary policy and shown on the **declarations** of this Personal Umbrella Policy.

(d) Any person or organization legally responsible for the acts or omissions of a person for whom coverage is afforded under the policy while that person is using an **auto** or **watercraft** insured by a primary policy and shown on the **declarations** of this Personal Umbrella Policy.

(e) Any person or organization legally responsible for damages caused by animals owned by **you, your** spouse, and residents of *your* household who are *relatives* or persons under *your* care and custody.

(f) The following are not **insureds:**

  (1) The owner or lessor (or their agents or employees) of:

   (i) An **auto;**
   (ii) Recreational vehicle; or
   (iii) **Watercraft**
   loaned to or hired for use by **you** or on *your* behalf.

  (2) A person other than an **insured** shown in **7.**(a) or **7.**(b) above using an **auto** or **watercraft** while employed in the business of:

   (i) Selling;
   (ii) Servicing;
   (iii) Repairing;
   (iv) Maintaining;
   (v) Parking;
   (vi) Docking;
   (vii) Mooring; or
   (viii) Storing

   **autos** or **watercraft**. This includes a person other than an **insured** or organization employing or engaging a person using the **autos** or **watercraft** in the above activities.

  (3) A person or organization with custody of animals owned by an **insured** in **7.**(a) or **7.**(b) above, in the course of any business or without the consent of an **insured** in **7.**(a) or **7.**(b) above.

The following definition is added:

*Relative* means a person related to **you** who resides in *your* household.

## PART III - EXCLUSIONS

The following exclusions are revised as follows:

**4.** Acts committed by or at any **insured's** direction with intent to cause **personal injury** or **property damage**. This exclusion does not apply to **personal injury** or **property damage** resulting from an act committed by an **insured** with reasonable and legally permissible force to protect persons and property from injury or damage.

**9.** Liability arising from serving on a board of directors, or as an officer of an organization. This exclusion does not apply:

  (a) If the service is performed for a charitable, religious or civic non-profit organization; and
  (b) Coverage for the **insured's** service is provided by primary insurance; and
  (c) The **insured** receives no compensation for such service.

PPE1KS (10-08)

**14.** Sexual molestation, corporal punishment or physical or mental abuse inflicted upon any person by or at the direction of an *insured*, an *insured's* employee or a volunteer involved in the day care enterprise.

The following exclusions are added:

**23.** The renting, leasing or sale of any property that has been contaminated by mold or mold spores.

**24.** The maintenance, use, or ownership of any motorized vehicle that is designed for use principally off public roads.

**25.** *Personal injury* that results from attack by a dog, or resulting from the ownership, maintenance, or use of a swimming pool, diving board, or trampoline unless covered by *primary insurance*.

**26.** *Personal injury* or *property damage* that results from slander of title.

**PART VI - CONDITIONS**

Condition **8., Policy Period and Territory**

The first sentence is replaced with the following:

**We** cover *personal injury* and *property damage* which takes place anywhere during the time this policy is in force, however, *we* do not cover *damages* resulting from *your* ownership of real property located outside of the United States of America, its territories or possessions, or Canada.

We affirm this amendment.

W. C. E. Robinson
Secretary

O. M. Nicely
President



Policy Number: ████████

*Your* policy is amended as follows:

**PART I - DEFINITIONS**

The following definitions are added:

*"Ride-sharing"* means the use of any vehicle by any *insured* in connection with a *transportation network company* from the time an *insured* logs on to or signs in to any computer or digital application or platform that connects or matches driver(s) with passenger(s) until the time an *insured* logs out of or signs off of any such application or platform, including while en route to pick up passenger(s) and while transporting passenger(s).

*"Transportation network company"* means a company or organization facilitating and/or providing transportation services using a computer or digital application or platform to connect or match passengers with drivers for compensation or a fee.

**PART III - EXCLUSIONS**

The following exclusion is added:

*We* do not cover *damages* resulting from any vehicle :

(a) used to carry persons or property for compensation or a fee, including but not limited to the delivery of food or any other products; or

(b) while being used for *ride-sharing*.

However, a vehicle used in an ordinary car pool is covered.

We affirm this amendment.

W. C. E. Robinson
Secretary

William E. Roberts
President

PPE1VS (05-14)

# GEICO'S PERSONAL UMBRELLA POLICY AMENDMENT
## UNINSURED/UNDERINSURED MOTORISTS COVERAGE
### KANSAS

*Your* policy is amended to provide Uninsured/Underinsured Motorists Coverage subject to the following:

## DEFINITIONS

1) *Bodily injury* means:

bodily injury to a person, including resulting sickness, disease or death.

2) *Farm auto* means:

a truck type vehicle with a load capacity of 2000 pounds or less, not used for commercial purposes other than farming.

3) *Hit-and-Run motor vehicle* is:

A motor vehicle whose owner or operator cannot be identified and which hits or which causes an occurrence resulting in *bodily injury* without hitting:

a) *you* or any *relative*

b) a vehicle which *you* or any *relative* are *occupying* or

c) *your insured auto,*

provided the *insured* or someone on his behalf;

a) reports the occurrence within 24 hours to a police, peace or judicial officer or the Commissioner of Motor Vehicles;

b) files with *us* within 30 days a statement setting forth the facts of the occurrence and claiming that the he has a cause of action for damages against an unidentified person; and

c) makes available for inspection, at *our* request, the auto *occupied* by the *insured* at the time of the accident.

In an occurrence involving a *hit-and-run vehicle* where there has not been any physical contact with the *hit-and-run vehicle,* the facts of the occurrence must be proven by reliable evidence from disinterested witnesses who are not making claim under this or similar coverage.

4) *Insured* means:

a) the individual named in the Declarations and his or her spouse if a resident of the same household;

b) *relatives* of (a) above if residents of his or her household;

c) any other person while *occupying* an *insured auto;* or

d) any person who is entitled to recover damages because of *bodily injury* sustained by an *insured* under (a), (b), and (c) above.

If there is more than one *insured, our* limits of liability will not be increased.

This definition of *insured* applies only to this Uninsured/Underinsured Motorists Coverage amendment.

5) *Insured auto* is an auto:

a) for which a premium is charged under Section IV of the Declarations of the underlying GEICO auto policy, and which is covered by the bodily injury liability coverage of that policy;

b) temporarily substituted for an *insured auto* when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction; or

c) operated by *you* or *your* spouse if a resident of the same household;

But the term *insured auto* does not include:

i. an auto being used without the owner's permission;

ii. under subparagraphs b) and c) above, an auto owned by or furnished for the regular use of an *insured.*

6) *Occupying* means:

a) in;
b) upon;
c) entering into; or
d) alighting from.

7) *Primary insurance* means insurance:

a) for which a minimum required liability limit is shown on the Declarations; and

b) which is payable on behalf of an *insured* for liability for personal injury; and

c) which must be maintained as a condition of the GEICO's Personal Umbrella Policy.

8) *Private passenger auto* means:

a four-wheel private passenger, station wagon or jeep-type auto.

9) **Relative** means:

a person related to **you** who resides in **your** household.

10) **State** includes:

The District of Columbia, the states, territories and possessions of the United States of America and the Provinces of Canada.

11) **Trailer** means:

a trailer designed to be towed by a **private passenger auto,** if not being used for business or commercial purposes with a vehicle other than a **private passenger, farm** or **utility auto.**

12) **Uninsured motor vehicle** is:

A motor vehicle which has no bodily injury liability bond or insurance policy applicable with liability limits complying with the financial responsibility law of the **state** in which the **insured auto** is principally garaged at the time of an occurrence. This term also includes an auto which is insured by an insurer which is or becomes insolvent or denies coverage and an **Underinsured Motor Vehicle** as defined.

The terms **Uninsured Motor Vehicle** and **Underinsured Motor Vehicle** do not include:

a) an **insured auto**

b) an auto owned or operated by a self insurer within the meaning of any motor vehicle financial responsibility law, motor carrier law or any similar law;

c) an auto owned by the United States of America, any other national government, a **state**, or a political subdivision of any such government or its agencies;

d) a land motor vehicle or **trailer** operated on rails or crawler-treads or located for use as a residence or premises; or

e) a farm-type tractor or equipment designed for use principally off public roads, except while used upon public roads.

13) **Underinsured motor vehicle** is:

A motor vehicle with respect to which the sum of the limits of liability under all bodily injury liability bonds and insurance policies applicable at the time of the occurrence is less than the Limits of Liability provided in **your** policy.

14) **Utility auto** means:

a vehicle, other than a **farm auto**, with a load capacity of 2000 pounds or less of the pick-up body, van or panel truck type not used for commercial purposes.

15) **You** means:

the policyholder named in the Declarations and his or her spouse if a resident of the same household.

**LOSSES WE PAY**

Under the Uninsured/Underinsured Motorists Coverage, we will pay damages for **bodily injury** caused by accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured** or **underinsured motor vehicle** or **hit-and-run motor vehicle** arising out of the ownership, maintenance or use of that auto, provided that a premium is shown for Uninsured/Underinsured Motorists Coverage on the Policy Declarations.

The amount of the **insured's** recovery for these damages will be determined by agreement between the **insured** or his or her representative and **us.**

**EXCLUSIONS**

**We** do not provide coverage under this amendment for:

1) **Bodily injury** to an **insured** if the **insured** or his or her legal representative has made a settlement or has been awarded a judgment of his or her claim without **our** prior written consent.

2) **Bodily injury** to an **insured** while **occupying** or resulting from being struck by an **uninsured** or **underinsured motor vehicle** or **trailer** owned by or provided for the regular use of an **insured** or a **relative.**

3) Any worker's compensation insurer, self-insurer or disability benefits insurer.

4) The United States of America or any of its agencies as an insured, a third party beneficiary or otherwise.

**LIMIT OF LIABILITY**

Regardless of the number of autos or **trailers** to which this policy applies:

1) The limit of liability stated in the **Declarations** is the total limit of **our** liability for all damages, including damages for care and loss of services, because of **bodily injury** sustained as the result of one occurrence regardless of the number of persons sustaining **bodily injury.**

2) If, however, the **bodily injury** is caused by an underinsured motorist, the coverage will be limited to the difference between the limit of liability stated in the **Declarations** and the limits of **bodily injury** coverage

carried by the owner or operator of the *under-insured motor vehicle.*

This is the most *we* will pay regardless of the number of:

a) Policies;
b) Persons covered;
c) Claims made;
d) Autos covered;
e) Autos involved in the occurrence; or
f) Premium paid or payable.

3) If separate policies with us are in effect for *you* or any person in *your* household, they may not be combined to increase the limit of liability for a loss.

4) If both *primary insurance* and this policy cover an occurrence, *we* pay only those damages which exceed the uninsured motorists limits of the applicable primary policy.

5) *We* will reduce any amount payable under the Limit of Liability by all amounts:

   a) paid by or for all persons or organizations liable for the injury;

   b) paid or payable under the Bodily Injury or Personal Injury Protection coverages of the primary policy;

   c) paid or payable under any worker's compensation law, disability benefits law or any similar law.

6) In no event will a covered person be entitled to receive duplicate payment for the same elements of loss.

7) *We* will pay under this amendment only after the limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements.

## OTHER INSURANCE

When an *insured occupies* an auto not described in this policy, this policy is excess over any other similar insurance available to the *insured* and the insurance which applies to the *occupied* auto is primary.

Except as provided above, if the *insured* has other similar insurance available to him and applicable to the occurrence, the damages will be deemed not to exceed the higher of the applicable limits of liability of this policy and the other insurance. If the *insured* has other insurance against a loss covered by the Uninsured Motorist provisions of this policy, *we* will not be liable for more than *our* pro-rata share of the total coverage available.

## TRUST AGREEMENT

When *we* make a payment under this coverage:

1) *We* will be entitled to repayment of that amount out of any settlement or judgment the *insured* recovers from any person or organization legally responsible for the *bodily injury.*

2) The *insured* will hold in trust for *our* benefit all rights of recovery which he or she may have against any person or organization responsible for his or her damages. He or she will do whatever is necessary to secure all rights of recovery and will do nothing after the loss to prejudice these rights.

3) At *our* written request, the *insured,* in his or her own name, will take, through a designated representative, appropriate actions to recover payment for damages from the legally responsible person or organization.

4) The *insured* will execute and furnish us with any needed documents to secure his or her and our rights and obligations.

## CONDITIONS

The following conditions apply only to the Uninsured/Underinsured Motorists Coverage:

1) NOTICE

   As soon as possible after an occurrence, notice must be given *us* or *our* authorized agent stating:

   a) the identity of the *insured*;

   b) the time, place and details of the occurrence; and

   c) the names and addresses of the injured, and of any witnesses.

   If the *insured* or his or her legal representative files suit before we make a settlement under this policy, the *insured* must immediately provide *us* with a copy of the pleadings.

2) ASSISTANCE AND COOPERATION OF THE **INSURED**

   After *we* receive notice of a claim, *we* may:

   a) require the *insured* to take any action necessary to preserve his or her recovery rights against any allegedly legally responsible person or organization.

   b) require the *insured* to make that person or organization a defendant in any action against *us.*

3) ACTION AGAINST US

   Suit will not lie against *us* unless the *insured* or his or her legal representative have fully complied with all the policy terms.

4) PROOF OF CLAIM-MEDICAL REPORTS

As soon as possible, the *insured* or other person making claim must give us written proof of claim, under oath if required. Such proof will include details of the nature and extent of injuries, treatment and other facts which may affect the amount payable.

The *insured* and other persons making claim must submit to examination under oath by any person named by *us* when and as often as *we* may reasonably require. Proof of claim must be made on forms furnished by *us* unless *we* have not furnished these forms within 15 days after receiving notice of claim.

The injured persons will submit to examination by doctors chosen by *us,* at *our* expense, as *we* may reasonably require. In the event of the *insured's* incapacity or death, the *insured's* legal representative must, at *our* request, authorize *us* to obtain medical reports and copies of records.

5) PAYMENT OF LOSS

Any amount due is payable:

a) to the *insured* or his or her authorized representative;

b) if the *insured* is a minor, to his or her parent or guardian; or

c) if the *insured* is deceased, to his or her surviving spouse; otherwise

d) to a person authorized by law to receive the payment, or to a person legally entitled to recover payment for the damages.

**We** may, at *our* option, pay any amount due in accordance with d) above.

6) SUBROGATION

When *we* make payment under this policy, *we* shall be subrogated to all rights of recovery, to the extent of *our* payment, that the *insured* may have against any person or organization legally responsible for the *bodily injury.* The *insured* will help us to enforce this right and will do nothing after loss to prejudice this right. If the damages in connection with an Underinsured Motorist claim exceed the policy limits of the negligent party's liability insurance, *we* shall be subrogated to all rights of recovery, to the extent of *our* total payment, provided that:

a) if the *insured* reached a tentative agreement with the negligent party's insurance carrier for payment of the liability policy limits, the *insured* provides *us* with written notice by certified mail that such an agreement has been reached. The notice shall include written documentation of pecuniary losses including copies of all medical bills and written authorization or a court order to obtain reports from all employers and medical providers; and

b) within 60 days of receipt of the written notice, *we* substitute payment to the *insured* for the tentative agreement amount.

7) MINIMUM REQUIRED UNINSURED MOTORISTS LIABILITY LIMIT

**You** agree with *us* to maintain the minimum required limit of liability for Uninsured Motorist Coverage on *your* current automobile policy. The minimum limit of liability is indicated on *your* GEICO's Personal Umbrella Policy declarations page.

All other provisions of this policy apply.



## PERSONAL UMBRELLA
### Kansas Option Form
### Uninsured Motorist Coverage
### (Includes Underinsured Motorist)



We now offer Uninsured Motorist Coverage (UM) for your Personal Umbrella policy. The limit of UM Coverage offered is *to equal the limit of Bodily Injury (BI) Liability on your Personal Umbrella policy.*

Please indicate below whether you wish to carry this coverage or not. If UM Coverage is to be included on your Personal Umbrella policy, we require that you carry limits of $300,000/$300,000 on your underlying automobile policy for UM Bodily Injury Liability Coverage.

☐ I wish to carry UM Coverage on my Personal Umbrella policy. The price <u>per vehicle</u> will be $51.00. I understand that the UM limit on my automobile policy will be raised to $300,000/$300,000 if I do not already carry this limit.

☐ I wish to reject UM Coverage on my Personal Umbrella policy, and understand that UM coverage will not be provided by the Personal Umbrella policy.

**Important: Please be sure to return this signed form to us. If you wish to carry UM Coverage, we cannot include it until you return this form.**

Signed: _____          Date: _____

Policy Number: ███████████

PPU1KS (01-09)







Government Employees Insurance Company
GEICO General Insurance Company
GEICO Indemnity Company
GEICO Casualty Company
GEICO County Mutual Insurance Company

GEICO Advantage Insurance Company
GEICO Choice Insurance Company
GEICO Secure Insurance Company
GEICO Insurance Agency, Inc.

# GEICO.

## PRIVACY NOTICE

### GEICO Respects Your Privacy

Protecting your privacy is very important to us. Policyholders like you have trusted us with their insurance needs since 1936, and we take our obligation to safeguard and secure your personal information very seriously. We want you to understand how we protect your privacy and when we collect and use your information.

### The Information We Collect

Non-public personally identifiable information ("Information") is information that identifies you and is not available to the general public. The following sections tell you more about how and when we collect your information.

### Information We Obtain From You

During the quoting, application, or claims handling processes you may give us Information such as your:

- name
- address
- phone number
- Social Security number
- driver's license number
- date of birth

If you gave us your email address, GEICO may use it from time to time to notify you of such things as new services, special offers, or to confirm transactions. You can log in to your account at geico.com, click on "Update Email Preferences" on the right side of the screen and choose the level of communication you'd like to receive from us. If you gave not enrolled online, you will need to en-roll with geico.com to update your email preferences.

### Information About Your Transactions

We may collect information about your transactions and experiences with us and others, such as your payment history, claims, coverage, and vehicle changes.

### Information From Third Parties

We may receive information about you from consumer re-porting agencies, which provide us with motor vehicle reports, claim reports, and/or credit information where permitted by law. When you ask for a rate quotation, we may obtain credit information if permitted by applicable state law.

Our sales and service representatives do not have access to the details of your credit information. Other companies who view your credit report will not see the GEICO inquiry. It will be visible only to you. Our inquiry will not affect your credit score or credit rating. If you commit to purchase a policy with GEICO, we will also confirm your motor vehicle record and claims history.

As permitted by law, we may also review your motor vehicle record and credit information in connection with any renewal.

### The Information We Disclose

Information about our customers or former customers will only be disclosed as permitted or required by law. Information about you that has been collected is maintained in your policy and/or claims records.

We use this information to process and service your policy; to settle claims; with your consent; or as directed by you. We may also disclose it to persons or organizations as necessary to perform transactions you request or authorize. Information about our former customers and about individuals who have obtained quotes from us is safeguarded to the same extent as information about our current policyholders.

Following are some examples of how we may disclose in-formation:

We must exchange Information about you with our agents, investigators, appraisers, attorneys, and other persons who are or will become involved in processing your application and servicing your policy or any claims you make and.

When you are involved in a claim, policy information is provided to adjusters and the businesses that will repair your vehicle.

We may share information with persons or organizations that we have determined need the Information to perform a business, professional, or insurance function for us. These include businesses that help us with administrative functions. If the law in your state permits, we may share Information with financial institutions with which we have a joint marketing agreement. All of these entities are obligated to keep the Information that we provide to them confidential and to use the Information only for the purpose for which the Information was provided.

Policy No.: ████████

Information may be provided to organizations conducting actuarial research or audits. In this case, you will not be individually identified in any research report. The organization must agree not to redisclose the Information and the Information will be returned to us or destroyed when it is no longer needed.

We may also share your information for other permitted purposes, including:

- with another insurance company if you are involved in an accident with their insured.
- with our reinsurers
- with insurance-support organizations that detect and prevent fraud
- among the GEICO companies listed above and other subsidiaries of GEICO Corporation to offer you additional products and services
- with medical professionals or institutions in order to verify coverage or conduct operations or services audits
- with state insurance departments or other govern- mental or law enforcement authorities if required by law or to protect our legal interests or in cases of suspected fraud or illegal activities
- if ordered by a subpoena, search warrant or other court order

**Confidentiality and Security**

We restrict access to your Information to employees who we have determined need it in order to provide products or services to you. We train our employees to safeguard customer information, and we require them to sign confidentiality and nondisclosure agreements. We maintain strict physical, electronic and procedural safeguards to protect your Information from unauthorized access by third parties.

**Changes to This Privacy Policy**

Each of our policyholders receives a copy of our privacy policy at least once per year. In addition, in the event that we make a significant change to our privacy practices, we will send a revised copy of our privacy policy to each of our current policyholders.

**What to Do if You Have Privacy or Security Concerns**

If you have a concern about privacy or security at GEICO, we want to hear about it by mail or email.

Please write to us at:

Privacy Administration
GEICO
One GEICO Plaza
Washington, DC 20076
or email us at privacypolicy@geico.com.

This Privacy Policy applies to all of the companies listed at the top of this notice.