## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GEICO GENERAL INSURANCE
COMPANY,

and

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

      Plaintiffs,

v.

M.O.,

and

M.B.,

      Defendants.

AND

M.B.,

      Counter-Plaintiff,

v.

GEICO GENERAL INSURANCE
COMPANY,

and

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

      Counter-Defendants.

Case No. 21-2164-DDC-ADM

## MEMORANDUM AND ORDER

Plaintiffs Geico General Insurance Company and Government Employees Insurance Company (collectively, "GEICO") bring a declaratory judgment action against defendants M.O. and M.B.,[1] seeking a declaration of no coverage under GEICO insurance policies issued to M.B. Before the court is defendant M.O.'s Motion to Dismiss GEICO's Amended Complaint for Lack of Personal Jurisdiction (Doc. 17) and supporting memorandum (Doc. 20). GEICO has filed a response in opposition (Doc. 26). And M.O. has replied (Doc. 32). For the following reasons, the court grants M.O.'s Motion to Dismiss.

## I.     Background

On a motion to dismiss for lack of personal jurisdiction, the court accepts as true all well pleaded factual allegations in plaintiff's Amended Complaint for Declaratory Judgment (Doc. 4), to the extent they are uncontroverted by affidavits or other written evidence. *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 836 (10th Cir. 2020). If the parties provide conflicting affidavits, the court must resolve those factual disputes in plaintiff's favor. *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).

Because GEICO's Amended Complaint focuses on the disputed coverage under an insurance policy, the court takes some of the salient background facts from the underlying tort suit between M.O. and M.B. It is pending in Missouri state court. M.O. attached her Petition for

---

[1]     Judge Mitchell granted in part defendants M.O. and M.B.'s Joint Motion for Leave to Proceed Using Initials or Anonymously, pending the court's Order on M.O.'s Motion to Dismiss. *See* Doc. 51 (Oct. 4, 2021 Mem. and Order Nunc Pro Tunc). As a result, the court will continue to refer to defendants by their initials.

Damages against M.B. in to her Motion to Dismiss, and the court considers that attachment here. *See generally* Doc. 20-1 (Ex. A).[2]

In late 2017, M.O. (who resides in Missouri) and M.B. (who resides in Kansas) started a romantic relationship. *See* Doc. 4 at 2, 3 (Am. Compl. ¶¶ 9–10, 16). Part of that relationship involved "unprotected sexual activities, including intercourse, in Defendant [M.B.'s] home and in his 2014 Hyundai Genesis car." *Id.* at 3 (Am. Compl. ¶ 16). M.O. alleges that M.B. was previously diagnosed with anogenital human papillomavirus (HPV), but that he didn't tell M.O. about it or take any measures to prevent transmitting the virus to her. *Id.* at 3 (Am. Compl. ¶ 17). At a regularly scheduled gynecology exam in November 2018, M.O. was diagnosed with anogenital HPV. *See* Doc. 20-1 at 2 (M.O.'s State Court Petition ¶ 11). She alleges that she contracted the virus from M.B. *Id.* (M.O.'s State Court Petition ¶ 13).

M.B. has an automobile insurance policy (the "Auto Policy") and an umbrella insurance policy (the "Umbrella Policy") with GEICO. Doc. 4 at 1–2 (Am. Compl. ¶ 1). Those insurance policies are the subject of this suit. On February 25, 2021, M.O. demanded that GEICO pay $1 million to resolve her claims of bodily injury against M.B. *Id.* at 2 (Am. Compl. ¶ 3). She also sent GEICO a proposed state court Petition suing M.B. for negligence and negligent infliction of emotional distress that she intended to file in Missouri state court should GEICO deny coverage.

---

[2]      Where, as here, the court decides a motion to dismiss for lack of personal jurisdiction before an evidentiary hearing, the court may consider affidavits and other written materials that the parties file. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). This includes public records from other proceedings, which the court may judicially notice without converting the Motion to Dismiss into one seeking summary judgment. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1172 (10th Cir. 1979) (explaining that "federal courts, in appropriate circumstances, may take [judicial] notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue"); *see also Serv. First Permits, LLC v. Lightmaker Vancouver (Internet) Inc.*, No. 18-CV-02089-CMA-NYW, 2019 WL 109335, at *4 (D. Colo. Jan. 4, 2019), *report and recommendation adopted*, No. 18-CV-02089-CMA-NYW, 2019 WL 1081002 (D. Colo. Jan. 25, 2019) ("'In addressing a [Rule 12 (b)(2)] motion to dismiss, the court may consider the pleadings themselves, materials embraced by the pleadings, exhibits attached to the pleadings, and matters of public record.'" (quoting *Illig v. Union Elec. Co.*, 652 F.3d 971, 976 (8th Cir. 2011))).

3

*Id.* at 2, 3 (Am. Compl. ¶¶ 3, 14–15); *see also* Doc. 27 (M.O.'s Demand Letter and Draft Petition for Damages). GEICO denied coverage. *See* Doc. 4 at 2 (Am. Compl. ¶ 4).

Around March 11, 2021, M.O. and M.B. entered an agreement under Mo. Ann. Stat. § 537.065. Doc. 51 at 3 (Oct. 4, 2021 Mem. and Order Nunc Pro Tunc). "An agreement under this provision 'expressly authorizes an insured to settle a personal injury . . . action by agreeing that the plaintiff may collect the settlement only against the insurer.'" *Allstate Ins. Co. v. Blount*, 491 F.3d 903, 907 (8th Cir. 2007) (quoting *Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 193 F.3d 966, 971 (8th Cir. 1999)). The agreement "does not determine the insured's liability but merely limits enforceability of a judgment." *Id.* (citing *O'Donnell v. St. Luke's Episcopal Presbyterian Hosps.*, 800 F.2d 739, 741 (8th Cir. 1986)). The agreement thus "limited M.B.'s liability to M.O., but left M.B. free to pursue recovery from GEICO." Doc. 51 at 3 (Oct. 4, 2021 Mem. and Order Nunc Pro Tunc). GEICO says that it wasn't aware of this agreement when M.B. and M.O. entered it. *Id.*

GEICO filed this Amended Complaint on April 8, 2021, seeking a "declaration that it has no duty under the Policies to defend or indemnify M.B. for the third party bodily injury liability claim asserted by M.O." Doc. 4 at 2 (Am. Compl. ¶ 2). On June 2, 2021, M.B. answered the Complaint and filed counterclaims. *See* Doc. 15. But on June 14, 2021, M.O. filed a Motion to Dismiss for Lack of Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2), arguing that "(1) M.O. is only seeking coverage for acts that solely occurred in Missouri, (2) M.O.'s actions do not fall within any provision of the Kansas[ ] long-arm statute and (3) M.O.'s actions do not create sufficient minimum contacts with Kansas to justify the [c]ourt's exercise of personal jurisdiction." Doc. 17 at 2.

4

Several events have transpired in Missouri state court since GEICO filed its Complaint seeking a declaratory judgment from this court. The court, in a previous Memorandum and Order issued by Judge Mitchell, already has described all that has happened. *See generally* Doc. 51. But for context, the court notes that M.O. and M.B. submitted M.O.'s claims to arbitration; the arbitrator awarded M.O. a $5.2 million judgment against M.B.; M.O. filed suit and an application to confirm the arbitration award in Jackson County Circuit Court in Missouri; GEICO sought to intervene in that suit; but the Jackson County Circuit Court simultaneously denied GEICO's motion to intervene, confirmed the arbitration award, and entered a $5.2 million judgment for M.O. *See id.* at 4–6. GEICO has appealed that decision. *Id.* at 6.

But those events, all which occurred after GEICO filed this declaratory judgment action, have no bearing on M.O.'s Motion to Dismiss. The court "'must examine the defendant's contacts with the forum at the time of the events underlying the dispute when determining whether [it has] jurisdiction.'" *XMission, L.C.*, 955 F.3d at 849 (quoting *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987)); *see also id.* (collecting further authorities establishing that post-Complaint activities are irrelevant when determining whether a court can exercise personal jurisdiction over a defendant). So, although the court provided these post-Complaint events to provide context, the court must not consider them in its personal jurisdiction analysis.

## II.    Legal Standard

Rule 12(b)(2) of the Federal Rules of Civil Procedure governs a claim for dismissal for lack of personal jurisdiction. A plaintiff bears the burden to establish personal jurisdiction over each defendant named in the action. *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine, Millimet & Branch*, 750 F.3d 1178, 1179–80 (10th Cir. 2014) (citation omitted). But in the

5

preliminary stages of litigation, a plaintiff's burden to prove personal jurisdiction is light. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008) (citation omitted).

Where, as here, a defendant asks the court to decide a pretrial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, a plaintiff must make only a prima facie showing of jurisdiction. *Id.* at 1056–57 (citing *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998)). "The plaintiff may make this prima facie showing by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc.*, 149 F.3d at 1091.

To defeat a plaintiff's prima facie showing of personal jurisdiction, defendants "must present a compelling case demonstrating 'that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)). When the defendant fails to controvert plaintiff's allegations with affidavits or other evidence, the court must accept the well-pleaded allegations in the complaint as true and resolve any factual disputes in plaintiff's favor. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A)). In a diversity action like this one, a plaintiff must show that exercising jurisdiction is proper under the laws of the forum state and that doing so comports with the Constitution's due process requirements. *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Co-op.*, 17 F.3d 1302, 1304–05 (10th Cir. 1994) (citation omitted).

But Kansas's long-arm statute is construed liberally to permit any exercise of jurisdiction that comports with the United States Constitution. *Id.* at 1305; *see also* Kan. Stat. Ann. § 60-

308(b)(1)(L) & (b)(2). Thus, it's unnecessary to conduct a separate personal jurisdiction analysis under Kansas law. Instead, the court may proceed directly to the due process inquiry. *Federated Rural Elec. Ins. Corp.*, 17 F.3d at 1305; *see also Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014) (explaining that where a state's long-arm statute "confers the maximum jurisdiction permissible consistent with the Due Process Clause . . . the first, statutory, inquiry effectively collapses into the second, constitutional, analysis" (internal quotation marks and citation omitted)).

The due process analysis involves a two-step inquiry. *First*, the court must determine whether the defendant has "minimum contacts with the forum state such that he should reasonably anticipate being haled into court there." *AST Sports Sci., Inc.*, 514 F.3d at 1057 (internal quotation marks and citation omitted). *Second*, if the defendant's actions establish such minimum contacts, the court then must decide "whether the exercise of personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice." *Id.* (internal quotation marks and citations omitted).

### A. Minimum Contacts

The Due Process Clause permits assertion of personal jurisdiction over a nonresident defendant so long as the defendant purposefully has established "minimum contacts" with the forum state. *Burger King*, 471 U.S. at 474. The "minimum contacts" standard is satisfied by establishing either (1) specific jurisdiction or (2) general jurisdiction. *Rockwood Select Asset Fund*, 750 F.3d at 1179. A court may assert specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI Holdings, Inc.*, 149 F.3d at 1090–91 (quoting *Burger King*, 471 U.S. at 472). Alternatively, if "a

7

court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the court may nonetheless maintain *general* personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state." *Id.* at 1091 (citation omitted). GEICO's arguments here rely solely on specific jurisdiction. *See* Doc. 26 at 5 ("This declaratory judgment action arises 'out of or relate[s] to the defendant's contacts' with Kansas." (quoting *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021))). So, the court confines its analysis to specific jurisdiction.

A court may exercise specific jurisdiction if: (1) the out-of-state defendant "purposefully directed" its activities at residents of the forum state and (2) the plaintiff's injuries arose from those purposefully directed activities. *Newsome v. Gallacher*, 722 F.3d 1257, 1264 (10th Cir. 2013) (citation omitted). Our Circuit analyzes the "purposefully directed" requirement differently depending on the cause of action alleged. *See Dudnikov*, 514 F.3d at 1071. "In the tort context, [our Circuit] often ask[s] whether the nonresident defendant 'purposefully directed' its activities at the forum state; in contract cases, meanwhile, [our Circuit] sometimes ask[s] whether the defendant 'purposefully availed' itself of the privilege of conducting activities or consummating a transaction in the forum state." *Id.* (citations omitted). "In all events, the shared aim of [the] 'purposeful direction' doctrine has been said by the Supreme Court to ensure that an out-of-state defendant is not bound to appear to account for merely 'random, fortuitous, or attenuated contacts' with the forum state." *Id.* (quoting *Burger King*, 471 U.S. at 475).

The Supreme Court has explained that the "inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 283–84 (2014) (internal quotation marks and citation omitted). "For a State to exercise jurisdiction consistent

with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Id.* at 284. In *Walden*, the Court emphasized two required (and related) aspects of the defendant's relationship with the forum state. *See id.* at 284–86.

*First*, the relationship between the defendant and the forum state "must arise out of contacts that the defendant *himself* creates with the forum State." *Id.* at 284 (internal quotation marks and citation omitted). Consistently, the Supreme Court has "rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff . . . and the forum State." *Id.* (citation omitted). "Put simply, however significant the plaintiff's contacts with the forum may be, those contacts cannot be decisive in determining whether the defendant's due process rights are violated." *Id.* at 285 (internal quotation marks and citation omitted).

*Second*, the "minimum contacts analysis" must focus on "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* (internal quotation marks and citation omitted). Thus, the Supreme Court has found, personal jurisdiction exists "over defendants who have purposefully 'reach[ed] out beyond' their State and into another [state] by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum State." *Id.* (quoting *Burger King*, 471 U.S. at 479–80). The Supreme Court also has upheld assertions of jurisdiction where a defendant "circulat[ed] magazines to 'deliberately exploi[t]' a market in the forum State." *Id.* (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 781 (1984)). And while "physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Id.* (citation omitted). But a plaintiff "cannot be the only link between the defendant and the forum."

9

*Id.* "Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Id.* (citation omitted). To put it another way, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Id.* at 286 (citation omitted). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* (quoting *Burger King*, 471 U.S. at 475).

### B.     Fair Play and Substantial Justice

Even when a defendant's actions create sufficient minimum contacts for personal jurisdiction, courts still must decide whether exercising personal jurisdiction "would nonetheless 'offend traditional notions of fair play and substantial justice.'" *Newsome*, 722 F.3d at 1271 (quoting *Dudnikov*, 514 F.3d at 1080). "'Such cases are rare.'" *Id.* (quoting *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1102 (10th Cir. 2009)). "The defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477). To determine whether the exercise of jurisdiction is unreasonable, courts consider five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

*OMI Holdings, Inc.*, 149 F.3d at 1095 (citing *Asahi Metal Indus. Co., Ltd. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987)).

## III. Discussion

GEICO's arguments supporting the conclusion the court has personal jurisdiction over nonresident defendant M.O. fall into two categories. *First*, GEICO argues that M.O.'s actions directly caused this declaratory judgment action about a Kansas insurance policy held by a Kansas resident. Specifically, GEICO contends that M.O. purposefully availed herself of the laws of Kansas by (a) demanding a $1 million payment "on a Kansas Auto Policy issued to a Kansas resident in connection with a Kansas automobile," and (b) entering into an agreement with M.B. under Missouri law to "directly seek[ ] recovery under [M.B.'s] Kansas Auto Policy." Doc. 26 at 5–6. *Second*, GEICO argues, M.O.'s contacts in her underlying tort suit with M.B. also establish personal jurisdiction in Kansas. Specifically, GEICO argues that this entire controversy arises out of M.O.'s sexual contact with M.B., at least some of which took place in (a) M.B.'s home in Kansas, and (b) M.B.'s car, which he registered, titled, licensed, and presumably garaged in Kansas. *See id.* at 6–7. But, ultimately, GEICO's arguments don't carry its burden to make a prima facie showing of specific personal jurisdiction over M.O., for reasons explained below.

### A. M.O.'s Contacts in this Insurance Action

To begin, the court must say a word about the unusual posture of this case because it ultimately influences the court's minimum contacts analysis. The first complication is that this is a declaratory judgment action asking the court to decide whether an insurance policy applies to M.O.'s third party claim for bodily injury. So, it's a step removed from the underlying dispute— a tort action between M.O. and M.B. To complicate matters further, this isn't just an insurance coverage dispute between an insurer and the insured. Here, there is a second defendant (M.O.), who is the plaintiff in the underlying tort suit—and she's a resident of Missouri, not Kansas. So,

analysis of her contacts with the state of Kansas under the ordinary "purposeful direction" or "availment" rubrics becomes a bit awkward. Fortunately, although not cited by the parties, the court has located two decisions from our court and one from the Kansas Supreme Court that consider similar circumstances and provide a helpful guide for ascertaining the relevant contacts for the personal jurisdiction analysis.

Our court considered a similar declaratory judgment action in *National Fire Insurance Company of Hartford v. National Cable Television Cooperative, Inc.*, No. CIV.A.10-2532-CM, 2011 WL 1430332 (D. Kan. Apr. 14, 2011) ("*NCTC*"). In that case, two insurers filed a declaratory judgment action against their insured (who was a cooperative of television programming distributors based in Kansas, the forum state). *Id.* at *1. The insurers sought a declaration that they didn't have to defend or indemnify the cooperative in an underlying FCC suit brought by a nonresident (who also was named as a defendant in the declaratory judgment action). *Id.* at *1. Our court held that the nonresident defendant had minimum contacts with Kansas because it had "aggressively sought membership in [the cooperative,] whose headquarters were in Kansas." *Id.* at *4. Specifically, the nonresident had "submitted a substantial, lengthy" application to join the cooperative in Kansas, "followed up repeatedly on the progress of its application" with the cooperative's management in Kansas, and then, when the cooperative denied the nonresident's application, the nonresident's "attorney sent a notice of possible litigation . . . to Kansas." *Id.* Our court concluded that "[a]ll of [those] contacts and communications" arose from the nonresident's "desire to be associated with a Kansas company." *Id.* And having "made that choice," the nonresident could not plausibly "claim that it had no idea that electing to work with a Kansas corporation would potentially subject it to the jurisdiction of the state of Kansas." *Id.*

Our court rejected the nonresident's argument that the court should ignore those contacts which served as the basis for the underlying FCC suit because the ultimate issue in the declaratory judgment action was whether the insurance policy applied. Although that was indeed the case's ultimate issue, the "immediate issue" was "whether the court c[ould] assert personal jurisdiction" over the nonresident. *Id.* at *6. And resolution of that issue "require[d] analysis of the facts of the underlying case." *Id.*; *see also id.* at *4 (explaining how the contacts that formed the basis for the underlying suit were the "impetus for the instant declaratory judgment action"). In reaching this conclusion, our court relied on the Kansas Supreme Court's decision in *St. Paul Surplus Lines Insurance Company v. International Playtex, Inc.*, 777 P.2d 1259 (Kan. 1989); *see NCTC*, 2011 WL 1430332, at *6 ("Like in *St. Paul*, the relevant contacts here are those in the underlying suit; not in the insurance action.").

In *St. Paul*, the Kansas Supreme Court analyzed an insured defendant's contacts in an underlying wrongful death action to determine whether the court could exercise specific personal jurisdiction over the defendant in a subsequent declaratory judgment action contesting the scope of an insurance policy. *See id.* at 1264–65. The court did so because the "question of coverage [arose] from the actions taken by [defendant] in selling its product in Kansas, which subsequently caused the death of a Kansas resident." *Id.* at 1264. It thus was irrelevant that "no activity took place in Kansas with regard to the formation of the insurance contracts." *Id.* at 1265. The defendant knew that "its [products] were distributed in Kansas[,]" that there "was a product liability risk under the insurance policies arising from the sale of [those products] in Kansas[,]" and thus the defendant could "anticipate[ ] that claims under the policies might arise in the State of Kansas." *Id.* at 1265. In short, the "plaintiff insurers' claim for an insurance

13

coverage determination l[ay] in the wake of the commercial activities of [defendant] in Kansas."
*Id.* at 1264.

This principle—looking to the defendant's contacts in the underlying suit, instead of its contacts to the immediate insurance action—also underlie our court's recent decision in *Philadelphia Indemnity Insurance Company v. Young*, No. 19-CV-01158-EFM-JPO, 2020 WL 1873621 (D. Kan. Apr. 15, 2020). In that case (yet another declaratory judgment action over an insurance policy), our court evaluated the underlying business contacts of a nonresident defendant who was a plaintiff in the underlying breach of fiduciary duty suit. Our court concluded that the defendant had "purposefully direct[ed] his activities toward Kansas" because although he was a Missouri resident, he was "instrumental in moving" the insured company defendant to Kansas and in bringing the underlying breach of fiduciary duty suit on that company's behalf. *Id.* at *3. Our court held that these Kansas contacts sufficed to support personal jurisdiction over the nonresident defendant. *See id.*

The upshot of these decisions is that when an insurer seeks a declaratory judgment about the scope of an insurance policy, the relevant contacts for a defendant like M.O. (who is not covered by the insurance policy) are the contacts with the forum state in the underlying suit. Here, that's M.O.'s tort suit against M.B.

The court is therefore reluctant to conclude that M.O.'s attempt to recover payment from GEICO or her agreement with M.B. limiting his personal liability are relevant to the minimum contacts analysis. But to the extent those contacts are relevant, the court concludes that they don't carry GEICO's burden to establish a prima facie showing of personal jurisdiction.

14

### 1. M.O.'s Demand For Recovery from a Kansas Auto Policy

To start, M.O.'s demand for recovery under a Kansas Auto Policy is insufficient to establish personal jurisdiction. GEICO, of course, argues that M.O.'s demand is sufficient. But the only authority GEICO provides as support for that argument is the Kansas Supreme Court's decision in *St. Paul*. *See* Doc. 26 at 5 ("By demanding payment of $1 million under a Kansas Auto Policy, [M.O.] should have 'anticipated that the claims under the policies might arise in [Kansas].'" (quoting *St. Paul*, 777 P.2d at 1265)). But GEICO's reliance on *St. Paul* strips that case from its context. As discussed above, the *St. Paul* defendant—who held the insurance policy—could have "anticipated that claims under the policies might arise in the State of Kansas" because the defendant had sold its products in Kansas and was aware of the corresponding product liability risk there. *St. Paul*, 777 P.2d at 1264–65. That circumstance doesn't exist here. M.O. isn't the tortfeasor in the underlying suit, as was the defendant in *St. Paul*. And she doesn't hold the insurance policy. So, *St. Paul* doesn't provide any support for GEICO's argument that M.O. should've anticipated GEICO haling her into court in Kansas over someone else's insurance policy.

Also, other federal courts have rejected GEICO's position that a mere demand of coverage under a forum state insurance policy amounts to purposeful availment of the forum state. *See Admiral Ins. Co. v. Briggs*, No. CIV.A. 302CV0310P, 2002 WL 1461911, at *7 (N.D. Tex. July 2, 2002) (rejecting insurer's argument in declaratory judgment action that the insured, "by demanding a defense under the [Texas insurance] Policy[,] . . . ha[s] invoked the protection of Texas insurance law, and that this constitutes personal availment of Texas law sufficient to establish minimum contact with the forum"), *cited with approval in M.G. v. Camp Wood Young Men's Christian Ass'n*, No. 16-2275-JAR-GEB, 2017 WL 680060, at *5 (D. Kan. Feb. 21,

2017); *see also Am. Cas. Co. of Reading, Pa. v. River's Edge Pharms., LLC*, No. SA-05-CA-525-FB, 2006 WL 62819, at *11 (W.D. Tex. Jan. 10, 2006) ("[T]he demand of a defense in an underlying suit would not in and of itself support a finding of personal jurisdiction over an insured in a declaratory judgment action brought by an insurer unless some tortious act was committed by the insured in the forum state." (citing *Briggs*, 2002 WL 1461911, at *8)). Although neither the Tenth Circuit nor our court has directly addressed an argument like GEICO's directly, the court finds that these Texas federal district court decisions are persuasive and predicts the Tenth Circuit would also find them persuasive if presented with this question. This is so for several reasons.

*First*, the Supreme Court "reject[s] the argument that if a State's law can properly be applied to a dispute, its courts necessarily have jurisdiction over the parties to that dispute." *Shaffer v. Heitner*, 433 U.S. 186, 215 (1977). That Kansas law likely governs the Auto Policy here is thus irrelevant to the personal jurisdiction question.

*Second*, in the analogous context of a patent infringement case, our court has held that a nonresident defendant sending a cease and desist letter into the forum state is not, on its own, sufficient to support personal jurisdiction over that defendant in a subsequent declaratory judgment action involving the patent. *See Elec. Realty Assocs., L.P. v. Paramount Pictures Corp.*, 935 F. Supp. 1172, 1176 (D. Kan. 1996). Indeed, such a letter has no effect on the minimum contacts analysis applied to a declaratory judgment action:

> Although an infringement letter might 'give rise' to a declaratory judgment action . . . it does so only in the sense that receiving such a letter may create a controversy motivating the accused infringer to commence an action to declare its rights. Such letters have no bearing on, *i.e.* are unrelated to, the subject matter of the subsequent claim: is the patent valid and, if so, have the plaintiff's acts infringed it.

*Id.* (quoting *Zumbro, Inc. v. Cal. Nat. Prods., Inc.*, 861 F. Supp. 773, 780 (D. Minn. 1994)). So too here. M.O.'s demand for coverage certainly gave rise to this declaratory judgment action,

16

but it has nothing to do with the subject matter of this suit: the scope of M.B.'s Auto Policy with GEICO. Thus, M.O.'s simple demand for coverage under a Kansas Auto Policy doesn't suffice to support personal jurisdiction, even accepting that M.O.'s demand triggered GEICO's filing of this declaratory action. *See* 4A Wright & Miller, *Federal Practice and Procedure* § 1069.1 (4th ed. 2021) ("Foreseeability also has been called into question when correspondence that proves to be a prelude to a lawsuit constitutes the only contact between the defendant corporation and the forum state.").

*Third*, M.O. didn't even send her demand for coverage into Kansas. M.O.'s counsel sent her demand letter to a GEICO Claims Specialist in San Diego, California. *See* Doc. 27 at 2. And GEICO is incorporated in Nebraska and has its principal place of business in Maryland. Doc. 4 at 2 (Am. Compl. ¶ 8). GEICO's argument that M.O. "necessarily anticipated" that her threat would reverberate to Kansas is unavailing. Doc. 26 at 7 n.6. Its only cited authority for that proposition, *Russey v. Rankin*, 837 F. Supp. 1103 (D.N.M. 1993), differs from the facts here. In that case, the plaintiff alleged violations of the federal Fair Debt Collection Practices Act and a related New Mexico law. *Id.* at 1104. The court exercised personal jurisdiction over an out-of-state debt collection business that sent a demand for collection to the plaintiff in New Mexico, the forum state. *Id.* at 1105. That singular demand sufficed to establish jurisdiction because it was "the nucleus of the alleged wrongful conduct rather than just an ancillary contact with the forum[.]" *Id.* It therefore was reasonable for the out-of-state defendant to "anticipate[ ] being [haled] into New Mexico court on claims based upon the letter." *Id.* But here, M.O. didn't send her demand letter into Kansas. So, there was no "injury" in the forum state. And her demand letter isn't "the nucleus" of this suit. The nucleus of this suit is M.B.'s insurance policy with GEICO. Again, M.O.'s demand letter may have sparked this suit, but it's not the suit's focus.

In short, M.O.'s demand for coverage under a Kansas Auto Policy isn't a sufficient contact for this court to exercise personal jurisdiction.

### 2. M.O. and M.B.'s Agreement Under Mo. Ann. Stat. § 537.065

GEICO next argues that this court can exercise personal jurisdiction over M.O. because she "entered into a contract with a Kansas resident for the purpose of giving her access to that resident's rights under the Kansas Auto Policy." Doc. 26 at 5. GEICO contends that because the court "plainly would have jurisdiction over any claim M.B. (a Kansas resident) could make under the Kansas Auto Policy insuring his Kansas automobile," the court necessarily has jurisdiction over someone who "essentially stands in [M.B.'s] shoes[.]" *Id.* at 6. Although this argument has some superficial appeal, the court ultimately finds it unpersuasive.

For starters, M.O. and M.B. entered an agreement under *Missouri* law to limit the enforceability of a *Missouri* judgment. This agreement only had two remote connections to Kansas. And neither suffice for personal jurisdiction.

The *first* connection is that, under the agreement, M.O. likely can recover her judgment against M.B. only from GEICO. Although the parties have not provided the specific contents of M.O. and M.B.'s agreement under Mo. Ann. Stat. § 537.065, this provision "'expressly authorizes an insured to settle a personal injury . . . action by agreeing that the plaintiff may collect the settlement only against the insurer.'" *Blount*, 491 F.3d at 907 (quoting *Esicorp, Inc.*, 193 F.3d at 971).[3]

---

[3]     As relevant here, § 537.065 provides:

Any person having an unliquidated claim for damages against a tort-feasor, on account of personal injuries, bodily injuries, or death may enter into a contract with such tort-feasor . . . whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither such person nor any other person, firm, or corporation claiming by or through him or her will levy execution, by garnishment or as otherwise provided by law, except against the specific

18

But even accepting GEICO's argument that the § 537.065 agreement essentially puts M.O. in M.B.'s shoes, a nonresident's simple demand for coverage under a Kansas insurance policy doesn't amount to purposeful availment of Kansas's laws, as explained above. Indeed, our court already has rejected a similar argument. In *M.G. v. Camp Wood Young Men's Christian Ass'n*, No. 16-2275-JAR-GEB, 2017 WL 680060, at *5 (D. Kan. Feb. 21, 2017), our court found that a nonresident defendant's status as an insured beneficiary on another defendant's Kansas insurance policy was an insufficient minimum contact with Kansas. The court reached this conclusion because the nonresident defendant "did not negotiate or sign the . . . insurance policy and there [was] no evidence that [defendant had] any input into performance of the insurance contract in Kansas." *Id.* (citing *Briggs*, 2002 WL 1461911, at *8) (further citation omitted). Instead, the insurance policy "was procured by a third party"—the other defendant in the lawsuit. *Id.* And such unilateral acts of a third party were "insufficient to constitute minimum contacts with the State of Kansas." *Id.*

Here, M.O. didn't negotiate M.B.'s Kansas Auto Policy, especially any provision that Kansas law applies to disputes over the policy's coverage. The only reason M.O. even would make a demand under a Kansas Auto Policy is because she was harmed by the Kansas resident who holds that policy. In other words, this connection to Kansas is a result of M.B.'s unilateral action procuring a Kansas Auto Policy. And connections to a forum state based on the "'unilateral activity of another party'" can't suffice to establish minimum contacts. *Old Republic*

---

assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract.

Mo. Ann. Stat. § 537.065.

*Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017) (quoting *Burger King*, 471 U.S. at 475).

The *second* connection is that M.O.'s agreement is with M.B., a Kansas resident. But a single agreement with a Kansas resident is insufficient to establish personal jurisdiction over M.O. in Kansas. *See Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1230 (10th Cir. 2020) ("[A]n out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction."). To exercise personal jurisdiction in a fashion consistent with the bounds of due process, the relationship between the defendant and the forum state "must arise out of contacts that the 'defendant *h[er]self*' creates with the forum State." *Walden*, 571 U.S. at 284 (quoting *Burger King*, 471 U.S. at 475). And, relatedly, the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* at 285. Putting it simply, M.O. didn't create any contact with the state of Kansas by entering an agreement under Missouri law to limit the enforceability of a Missouri judgment. That she made this agreement with a Kansas resident doesn't change that conclusion.

In short, to the extent M.O.'s contacts with the Kansas Auto Policy are relevant, those contacts are simply too attenuated to justify the exercise of personal jurisdiction over her in Kansas.

## B. M.O.'s Contacts in the Underlying Tort Action

GEICO next focuses on M.O.'s contacts in the underlying tort action against M.B. GEICO argues that by engaging in sexual relations with M.B. in his home in Kansas and in his car (which is registered, titled, licensed, and garaged in Kansas), M.O. had "reason to expect such a claim" flowing from those activities "would arise in Kansas[.]" Doc. 26 at 7. But

GEICO's arguments ultimately are grounded in mere "foreseeability," which the Supreme Court has foreclosed as a basis for personal jurisdiction.

To begin, the parties quibble over the relevant location of the harm in the underlying suit. When M.O. first demanded payment from GEICO, her proposed state court Petition against M.B. alleged that she and M.B. engaged in unprotected sexual activities in "[M.B.'s] home and in his 2014 Hyundai Genesis car." Doc. 27 at 4 (M.O.'s Proposed State Court Petition ¶ 8). But in the Petition M.O. eventually filed with the Jackson County, Missouri Circuit Court, M.O. alleged that she and M.B. only engaged in unprotected sexual activities in "M.B.'s 2014 Hyundai Genesis car." Doc. 20-1 at 2 (M.O.'s State Court Petition ¶ 8). And in her Motion to Dismiss, M.O. argues, she "is only seeking coverage for acts that solely occurred in Missouri[.]" Doc. 17 at 2. GEICO contends that M.O. can't nullify her contact with Kansas by claiming that her injures resulted solely from sexual activity in M.B.'s car in Missouri. Doc. 26 at 7.

The court concludes that it can consider M.O. and M.B.'s sexual activities in Kansas in its minimum contacts analysis. M.O. doesn't dispute that at least some of the relevant conduct occurred in Kansas. And, importantly, the court must analyze a party's minimum contacts with the forum state when the Complaint is filed. *See XMission, L.C.*, 955 F.3d at 849. When GEICO filed its Complaint for a Declaratory Judgment, M.O. hadn't filed her state court suit yet. So, at that point in time, GEICO only had seen her proposed Petition, which included allegations of sexual conduct in Kansas.

Even so, the court concludes that M.O.'s sexual activities in Kansas provide an insufficient basis for personal jurisdiction. Our Circuit instructs that in "the tort context, [courts] often ask whether the nonresident defendant 'purposefully directed' its activities at the forum state[.]" *Dudnikov*, 514 F.3d at 1071. And in the ordinary declaratory judgment action about

21

insurance coverage, the nonresident defendant is the insured party who caused a harm in the underlying tort suit. But here, M.O. isn't the defendant in the underlying suit. She's the plaintiff. In other words, M.O. didn't cause an injury in Kansas. Instead, she sustained an injury in Kansas. Basing personal jurisdiction on that fact stands the "minimum contacts" analysis on its head. *See Dental Dynamics, LLC*, 946 F.3d at 1229 ("The minimum contacts test for specific personal jurisdiction has two requirements: (1) a *defendant* must have 'purposefully directed its activities at residents of the forum state,' and (2) the plaintiff's injuries must arise out of the *defendant's* forum-related activities." (emphasis added) (footnote omitted) (quoting *Old Republic*, 877 F.3d at 904)); *see also id.* ("The mere foreseeability of *causing injury* in another state is insufficient on its own to establish purposeful direction." (emphasis added)). In short, the court concludes that M.O.'s most salient contact with Kansas—she sustained an injury there—is irrelevant to the minimum contacts analysis, which focuses on defendant's activities *causing* an injury in the forum state.

GEICO's final argument for jurisdiction is similarly unavailing. GEICO contends that M.O.'s sexual activities with M.B. in his car in Missouri created "reason to expect . . . a claim would [later] arise in Kansas" because M.O. "knew M.B. was a Kansas resident and operated the car under a Kansas license; she could see that M.B.'s car ha[d] Kansas plates; and, from her time spent in M.B.'s home, she presumably knew that M.B.'s car was garaged in Kansas." Doc. 26 at 7–8. But even accepting all these allegations as true, this argument is based entirely in "foreseeability." And the "Supreme Court . . . has cautioned that 'foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause.'" *OMI Holdings, Inc.*, 149 F.3d at 1094 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980)) (further quotations omitted). In line with this authority, our Circuit has held in

a declaratory judgment action about an insurance dispute that "whether a defendant may foresee that a plaintiff may attempt to implead it into an action in a foreign forum is of little relevance in determining whether a defendant has established minimum contacts with that forum." *Id.* at 1094.[4] So, the court cannot exercise personal jurisdiction on M.O. based on this foreseeability argument. *See id.* at 1094–95 (disagreeing with other court's exercise of personal jurisdiction because it "seem[ed] to be based entirely on foreseeability").

GEICO maintains, however, that "in an insurance-coverage dispute, the location of the insured risk"—here, M.B.'s Kansas car—"is relevant when establishing minimum contacts for personal jurisdiction even when the claimed insurance benefits are sought in another jurisdiction." Doc. 26 at 8 (citing *St. Paul*, 777 P.2d at 1264). But GEICO acknowledges that this contact with Kansas occurred only because "M.B. . . . insured the vehicle in Kansas." *Id.* at 8 n.8. That's the unilateral act of a third party. And M.O.'s choice "to engage in a romantic tryst in that Kansas vehicle[,]" *id.*, is insufficient to exercise personal jurisdiction here, as explained before.

## C.    GEICO's Request for Jurisdictional Discovery

GEICO alternatively requests that the court allow the parties to conduct jurisdictional discovery, rather than grant M.O.'s Motion to Dismiss. *See* Doc. 26 at 11–13. But GEICO devotes its entire argument on this front to factual disputes that the court already has resolved in GEICO's favor, as it must at this stage. *See id.* at 12–13 (discussing the dispute about whether any of the relevant sexual conduct occurred in Kansas and that M.O. and M.B. have not provided GEICO a copy of their § 537.065 agreement). The court already has considered M.O.'s sexual

---

[4]     To be sure, the roles in *OMI Holdings, Inc.* were flipped—the insured was the plaintiff, and the insurer was the defendant. But the principle of *OMI Holdings, Inc.* still applies here:  a nonresident defendant's mere foreseeability that they might be drawn into a dispute in the forum state is not a basis for personal jurisdiction.

conduct with M.B. in Kansas but has concluded that it was insufficient to subject her to personal jurisdiction in Kansas. And the court accepted GEICO's argument that M.O. essentially stood in M.B.'s shoes via the § 537.065 agreement, but likewise found that contact insufficient for personal jurisdiction. Aside from these disputes, which the court has resolved in GEICO's favor, GEICO offers no other reason why jurisdictional discovery is necessary. Indeed, GEICO offers no fact—even in a general sense—that, if discovered, might influence the personal jurisdiction analysis. All GEICO argues is that "discovery will almost certainly reveal additional Kansas contacts by M.O. related to the issues in this case." *Id.* at 13. But vague contentions of this quality don't justify jurisdictional discovery. GEICO already has all the facts it needs to argue that M.O. has minimum contacts with Kansas to justify the exercise of personal jurisdiction in Kansas. GEICO's problem is that those facts are insufficient to establish jurisdiction.

On a final note, as GEICO concedes, dismissing M.O. from this lawsuit ultimately has no effect on this declaratory judgment action between GEICO and M.B. *Id.* at 13 n.15 (conceding that "M.O. . . . is not a legally necessary party to this action to declare the rights and obligations under a Kansas Auto Policy issued to a Kansas insured"). After all the effort spent by the parties and the court on this issue, the merits of the declaratory judgment action still remain.

## IV. Conclusion

For these reasons, the court concludes that GEICO hasn't carried its prima facie burden to establish this court's personal jurisdiction over nonresident defendant M.O. The court thus grants M.O.'s Motion to Dismiss.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant M.O.'s Motion to Dismiss (Doc. 17) is granted.

24

**IT IS SO ORDERED.**

**Dated this 20th day of October, 2021, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**