# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION – KANSAS CITY

GEICO GENERAL INSURANCE
COMPANY,

and

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

       Plaintiffs,

v.

MARTIN BRAUNER,

and

M.O.,

       Defendants.

AND

MARTIN BRAUNER

and

M.O.,

       Counter-plaintiffs,

v.

GEICO GENERAL INSURANCE
COMPANY,

and

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

       Counter-defendants,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**Case No.** 4:22-cv-00082-CV-W-FJG

## GEICO PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

**<u>TABLE OF CONTENTS</u>**

INTRODUCTION ................................................................................................................... 1

STATEMENT OF MATERIAL FACTS .................................................................................. 2

PROCEDURAL HISTORY....................................................................................................... 8

ARGUMENT ............................................................................................................................ 9

I.     Legal Standard ................................................................................................................ 9

II.    The Court should grant summary judgment to GEICO on its declaratory judgment claim, because the Auto Policy does not cover liability for the alleged negligent transmission of a sexually-transmitted disease in a parked vehicle.................................. 11

III.   The Court should grant summary judgment to GEICO on its declaratory judgment claim as it relates to the Umbrella Policies, because, since the commencement of this action, M.O. and Brauner have stipulated such policies do not afford coverage here...................................................................................................................................... 16

CONCLUSION......................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Ass'n*,
    529 P.2d 171 (Kan. 1974) .........................................................................................11

*Allied Mut. Ins. Co. v. Patrick*,
    819 P.2d 1233 (Kan. Ct. App. 1991) ..............................................................13, 14

*Brown v. Shelter*,
    838 S.W.2d 148 (Mo. App. 1992) ............................................................................15

*Burk v. Unified Sch. Dist. No. 329, Wabaunsee Cnty., Kan.*,
    646 F. Supp. 1557 (D. Kan. 1986) ..........................................................................14

*Butterball, LLC v. Great Am. E&S Ins. Co.*,
    No. 18-5074-CV-SW-BP, 2019 WL 4888625 (W.D. Mo. July 9, 2019) ...............10

*Carrasco v. Allstate Ins. Co.*,
    264 P.3d 1058 (Kan. Ct. App. 2011) (unpublished) ...............................................14

*Central Power Sys's & Serv's, Inc., v. Univ. Underwriters Ins. Co.*,
    319 P.3d 562 (Kan. Ct. App. 2014) ..........................................................................10

*Crown Center Redevelopment Corp. v. Occidental Fire & Cas. Co. of North
    Carolina*,
    716 S.W.2d 348 (Mo. Ct. App. 1986) .....................................................................10

*Erie R.R. Co. v. Tompkins*,
    304 U.S. 64 (1938) ...................................................................................................11

*Farm Bureau Mut. Ins. Co., Inc. v. Evans*,
    637 P.2d 491 (Kan. Ct. App. 1981) ...........................................................1, 11, 12, 13, 14

*Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*,
    248 Kan. 657, 810 P.2d 283 (1991) ........................................................................11

*Ferens v. John Deere Co.*,
    494 U.S. 516 (1990) ...................................................................................................9

*Garrison v. State Farm Mutual Auto Ins. Co.*,
    907 P.2d 891 (Kan. 1995) ....................................................................................1, 12

*Hamidian v. State Farm Fire & Cas. Co.*,
    833 P.2d 1007 (Kan. 1992) ................................................................................12, 14

*In re K.M.H.*,
    169 P.3d 1025 (Kan. 2007) .................................................................10

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
    313 U.S. 487 (1941) ...........................................................................10

*Marshall v. Kan. Med. Mut. Ins. Co.*,
    73 P.3d 120 (Kan. 2003) .....................................................................11

*Raines v. Safeco Ins. Co. of Am.*,
    2010 WL 11545672, at *4 (W.D. Mo. Mar. 31, 2010) ..........................11

*Safeco Ins. Co. of Am. v. Allen*,
    941 P.2d 1365 (Kan. 1997) .................................................................10

*Short v. Blue Cross & Blue Shield of Kan., Inc.*,
    441 P.3d 1058 (Kan. Ct. App. 2019) ..............................................11, 12

*Sports Unlimited, Inc. v. Lankford Enterprises, Inc.*,
    275 F.3d 996 (10th Cir. 2002) ............................................................11

*State Farm v. Flanary*,
    879 S.W. 720 (Mo. Ct. App. 1994) ......................................................15

*United Servs. Auto. Ass'n v. DeWitt*,
    No. 69,983, 1994 WL 17120824 (Kan. Ct. App. Mar. 4, 1994) ...................2, 14, 15

*Walden v. Smith*,
    427 S.W.3d 269 (Mo. Ct. App. 2014) ...................................................15

**Rules**

Fed. R. Civ. P. 56 ......................................................................................1

Fed. R. Civ. P. 56(a) .................................................................................9

Kansas Supreme Court Rule 7.04(g) ..........................................................14

Local Rule 56.1 .........................................................................................1

**Other Authorities**

Restatement (Second) of Conflict of Laws section 188..................................10

Restatement (Second) of Conflict of Laws § 193 (1971) ..............................10

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1 of this Court, Plaintiffs Government Employees Insurance Company and GEICO General Insurance Company (collectively "GEICO") move for summary judgment. In support, GEICO provides the following memorandum.

<h1 style="text-align:center">INTRODUCTION</h1>

Martin Brauner and M.O. (the defendants and counter-plaintiffs) assert GEICO must pay them well over $5 million under Brauner's 2017 GEICO auto policy (the "Auto Policy") on the basis that, at the time that Brauner allegedly transmitted anogenital human papillomavirus (HPV) to M.O., the parties happened to be engaging in sexual activity in Brauner's car. As detailed in GEICO's concurrently-filed motion for clarification, should this case proceed beyond this initial summary judgment motion, there are numerous reasons why Brauner and M.O.—a formerly-engaged couple who admitted to sexual activities in locations well beyond Brauner's vehicle prior to M.O.'s HPV diagnosis—cannot recover anything from GEICO. But neither this Court, nor the parties, ever need to reach those issues. Instead, this Court should grant GEICO summary judgment for the simple reason that the Auto Policy provides no coverage for the transmission of HPV solely based on the allegation that transmission occurred during sexual activity in a parked car.

To establish otherwise, Brauner and M.O. would have to prove that such transmission constituted "bodily injury … arising out of the ownership, maintenance or use of" an automobile. (GEICO Auto Policy, **Ex. K.**) But under authoritative Kansas precedent, which applies here, the allegation that Brauner's parked car was the "situs" for Brauner and M.O.'s sexual activity fails to establish this requirement as a matter of law. *See Garrison v. State Farm Mutual Auto Ins. Co.*, 907 P.2d 891, 895 (Kan. 1995) ("merely because a motor vehicle is the situs of an injury, the injury does not necessarily arise out of the use of a motor vehicle"); *Farm Bureau Mut. Ins. Co., Inc. v. Evans*, 637 P.2d 491, 493 (Kan. Ct. App. 1981) (use of a motor vehicle as a "shelter" does not

1

create coverage for an injury because "an injury does not arise out of the 'use' of a vehicle within the meaning of the coverage clause of an automobile policy if it is caused by some intervening cause not identifiable with normal ownership, maintenance and use of the insured vehicle and injury complained of"); *United Servs. Auto. Ass'n v. DeWitt*, No. 69,983, 1994 WL 17120824, at *4 (Kan. Ct. App. Mar. 4, 1994) (in an unpublished—and thus non-precedential but persuasive—decision, relying on *Evans* to hold that transmission of a sexually transmitted disease on a yacht was not a "bodily injury … arising out of the yacht" as "there is no causal connection between the yacht and a venereal disease transmitted during voluntary sexual conduct on the yacht").

In light of the Auto Policy's clear language and this authority, GEICO respectfully requests that this Court grant summary judgment on this threshold coverage question, before the parties and the Court expend valuable resources on unnecessary discovery and motion practice in a case that fails as a matter of law.[1]

## STATEMENT OF MATERIAL FACTS

### The Underlying Conduct

1.     M.O. and Brauner began a multi-year "continuous" sexual relationship with each other in or around November 2017. (M.O. Resp. ROG 1, **Ex. A**; Brauner Resp. 2d RFA 47, **Ex. B.**)

2.     M.O. and Brauner engaged in unprotected sexual activities at M.O.'s house in Kansas City, Missouri sometime in November or December in 2017. (Brauner Resp. to 1st ROG 14, **Ex. C.**)

---

[1] GEICO expressly reserves its right to conduct discovery on and challenge the allegations that sexual activity in the listed vehicle caused M.O.'s HPV during the Auto Policy period, if necessary, as this issue is only assumed for the limited purposes of presenting this threshold coverage issue to the Court on summary judgment. GEICO is filing its early summary judgment motion on what it understands to be the threshold issue of coverage. If this motion were to be denied, however, GEICO intends to later move for summary judgment on any other issues when summary judgment is supported by further discovery and expressly reserves its right to do so.

3.	M.O. and Brauner engaged in unprotected sexual activities at Brauner's Kansas house on multiple occasions in December of 2017. (Brauner Resp. 1st ROG 2, **Ex. C**; M.O. Resp. ROG 1, **Ex. A**.)

4.	The GEICO Auto Policy lists an effective policy period of June 23, 2017 through December 23, 2017. (Auto Policy, **Ex. K.**)

5.	Certain unprotected sexual activities in December 2017 between M.O. and Brauner occurred after December 23, 2017, including at Brauner's Kansas house New Year's Eve weekend. (Brauner Resp. 1st ROG 2, **Ex. C**)

6.	M.O. and Brauner had engaged in sexual activity in Brauner's 2014 Hyundai Genesis at least once as of December 2017. (M.O. Resp. to First ROG No. 1, **Ex. C**.)[2]

7.	The sexual relationship between M.O. and Brauner continued for approximately two years and seven months. (Brauner Resp. 2nd RFA 47, **Ex. B**)

8.	M.O. was diagnosed with HPV sometime in October of 2018. (M.O. Resp. ROG 10, **Ex. A**)

9.	M.O. and Brauner continued to engage in unprotected sexual activities after M.O. was diagnosed with HPV. (Brauner Resp. 2nd RFA 49, **Ex. B**.)

10.	Brauner and M.O. were engaged to be married, but the engagement ended around May 2020. (Brauner Resp. 2nd RFA 56, **Ex. B**)

11.	M.O. first asserted a potential tort claim against Brauner arising out of the transmission of HPV after May 2020. (Brauner Resp. 2nd RFA 57, **Ex. B**)

---

[2] Again, GEICO accepts this fact as true solely for purposes of this summary judgment motion.

## The Insurance Demands & Arbitration

12.     Counsel for claimant M.O. sent a letter dated November 10, 2020 to Brauner stating in part "[t]his firm has been retained to represent [M.O.] for personal injuries she suffered as a result of the transmission of the HPV virus by you in your household. . . We are requesting a copy of all applicable insurance policies, including declaration pages and excess/umbrella policies that were in effect during the time period of 2017 through 2020 that may provide indemnity for you." (Nov. 10, 2020 Mayer Ltr. to Brauner, ACUITY_000071, **Ex. J.**) That letter does not mention Brauner's 2014 Hyundai Genesis. *See id.*

13.     Brauner submitted a (non-GEICO) homeowner's claim, with Acuity Insurance, in relation to M.O.'s alleged injury. (ACUITY Bus. Rec. Affidavit, **Ex. F**; Acuity Claims Notes at ACUITY000001, **Ex. G.**)

14.     Brauner submitted a separate (non-GEICO) homeowner's claim to a different homeowners' insurance carrier—The Travelers Home and Marine Insurance Company (One of the Travelers Property Casualty Companies). (GEICO's May 13, 2022 Resp. to M.O. First ROGs 3 & 4 (referencing bates range inclusive of Dec. 8, 2020 Workmon Travelers Note), **Ex. L.**)

15.     Brauner also submitted a claim under a (non-GEICO) auto insurance policy that was not effective until after the expiration of the at-issue GEICO Auto Policy. (PROGRESSIVE Bus. Rec. Affidavit, **Ex. H**; Progressive Dec. Sheet & Claims Notes at PROGRESSIVE_209, 212, **Ex. I.**)

16.     On February 25, 2021, M.O. demanded that GEICO pay "the applicable limits of [$1,000,000]" to resolve her "claims against [Brauner]." She included in her demand letter a proposed state court petition and indicated intent to file it should GEICO not satisfy her demand. (M.O. Demand and Draft Petition, **Ex. E**)

17.     M.O.'s proposed state court petition sought from Brauner damages for alleged negligence and alleged negligent infliction of emotional distress. (M.O. Demand and Draft Petition, **Ex. E**)

18.     In the February 25, 2021 demand letter and proposed petition, M.O. alleges that she and Brauner entered into a sexual relationship in November 2017 and early December 2017, including that the two "engaged in unprotected sexual activities, including intercourse, in Defendant [Brauner's] home and in his 2014 Hyundai Genesis car." (M.O. Demand and Draft Petition, **Ex. E**)

19.     In the February 25 demand letter and proposed petition, M.O. alleges that Brauner negligently failed to tell M.O. that he was infected with anogenital human papillomavirus (HPV), and that he failed to use adequate protection and take proper precautions to prevent its transmission to her. (M.O. Demand and Draft Petition, **Ex. E**)

20.     GEICO denied the demand for coverage of M.O.'s subject liability claim. *See generally* M.O. March 8, 2022 Counter-claim, Dkt. 103; *see also* Brauner March 18, 2022 Counter-claim, Dkt. 105.

21.     Following the commencement of this action, M.O. and Brauner arbitrated M.O.'s subject liability claim on or about May 17, 2021. (M.O. Resp. 1st ROG 2-3, **Ex. A**)

22.     GEICO did not consent in writing or in any other way to any arbitration between M.O. and Brauner. (M.O. Resp. to First ROG 3, **Ex. A.**)

23.     The arbitrator entered an award to M.O. of $5,200,000.00, finding in part that "there was sexual activity in [Brauner's] automobile in November/December 2017" that "directly caused,

or directly contributed to cause, M.O. to be infected with HPV." (May 18, 2021 Arb. Findings, **Ex. M**.)[3]

## **The GEICO Policies**

24.     GEICO issued a Personal Umbrella Policy to Brauner, Policy No. P7196540, effective November 26, 2016 to November 26, 2017, which was renewed for a policy period of November 26, 2017 to November 26, 2018 (collectively, the "Umbrella Policies").

25.     The Parties have stipulated that the Umbrella Policies do not afford coverage for M.O.'s subject liability claim against Brauner. (Feb. 4, 2022 Agt. to Transfer, Dkt. 91-1, **Ex. N).**

26.     The Parties' stipulation, which was filed in this case at the District of Kansas, states in part:

> Brauner and [M.O.] agree neither is seeking nor will seek, in any forum or form, any coverage for Subject Claims under the Umbrella Policies or any other contractual or extra-contractual claims related in any way to the Umbrella Policies arising out of or in any way related to the Subject Claims. Brauner and [M.O.] hereby release any and all such claims, known or unknown, existing in the past or that may arise in the future, against GEICO, for consideration that includes the terms of this Agreement.

(Feb. 4, 2022 Agt. to Transfer, Dkt. 91-1, **Ex. N).**

27.     GEICO issued a Kansas Family Automobile Insurance Policy to Brauner, No. 4133-84-43-91, effective June 23, 2017 through December 23, 2017, listing Brauner's 2014 Hyundai Genesis. (GEICO Auto Policy, **Ex. K**.)

28.     Brauner received a copy of the Auto Policy at his Kansas address. (Brauner Resp. to 1st RFA 33, **Ex. O**.)

---

[3] Again, should this motion on the threshold coverage issue be denied, GEICO intends to contest the validity of the arbitrator's findings as well as whether GEICO is bound by any such findings in part because it was not permitted to participate in, nor even informed of, the arbitration.

29.     In Section I ("Liability Coverages"), the Auto Policy states in part that GEICO will

"pay damages which an *insured* becomes legally obligated to pay because of (1) *bodily injury*,

sustained by a person, and; (2) damage to or destruction of property, arising out of the ownership,

maintenance or use of the *owned auto* or a *non-owned auto*. We will defend any suit for damages

payable under the terms of this policy. We may investigate and settle any claim or suit."

    a.    Section I defines "*insured*" as "a person or organization described under PERSONS INSURED," which includes the named insured, in this case, Brauner.

    b.    Section I's definition of "*bodily injury*" includes "sickness, disease or death."

    c.    Section I defines "*owned auto*" as, among other things, "a vehicle described in this policy for which a premium charge is shown for these coverages." The car for which a premium charge is shown under this Auto Policy is the listed 2014 Hyundai Genesis.

    d.    Section I defines "*you*" and "*your*" as "the policyholder named in the declarations or his or her spouse if a resident of the same household."

30.     In Section VI ("Amendments and Endorsements"), GEICO states it will pay certain

limited benefits "incurred because of *bodily injury* sustained by an *eligible injured person* caused

by an accident arising out of the ownership, operation, maintenance or use of a *motor vehicle*."  In

the Exclusions of Section VI, GEICO precludes coverage for "*bodily injury* to *you* or any *relative*

while *occupying* any *motor vehicle* owned by *you* which is not an *insured auto*" or "*bodily injury*

to any person if that person [] caused such *bodily injury* to such person intentionally."

    a.    Section VI adopts Section I's definition of *bodily injury*.

    b.    Section VI defines "*eligible injured person*" as, among other things, "any other person who sustains *bodily injury* while *occupying* the *insured auto* or through direct physical contact with the *insured auto* while not *occupying* any *motor vehicle*."

    c.    Section VI defines "*insured auto*" as a *motor vehicle* which *you* own and with respect to which; (a) the bodily injury liability insurance of the policy applies and for which a specific premium is charged; and (b) *you* are required or have elected to maintain security required under the Kansas Automobile Injury Reparations Act.

d. Section VI defines "***motor vehicle***" as a self-propelled vehicle of a kind required to be registered in the State of Kansas, including any trailer, semi-trailer, or pole trailer designed for use with such vehicle, but such term does not include a motorized bicycle.

(GEICO Auto Policy, **Ex. K.**)

## PROCEDURAL HISTORY

On April 7, 2021, GEICO commenced this lawsuit in the United States District Court for the District of Kansas, seeking a judicial determination it owed no coverage under either the Auto Policy or Umbrella Policies for M.O.'s liability claim against Brauner. GEICO named both Brauner and M.O. as defendants. GEICO chose the United States District Court for the District of Kansas as the initial forum because the Auto Policy is a Kansas Auto Policy, Brauner is a Kansan, the listed automobile is located in Kansas, and some of the actions alleged by M.O. allegedly occurred in Kansas. The District of Kansas determined it lacked personal jurisdiction over M.O. and dismissed her from the case. (D. Kan. No. 2:21-cv-02164, Dkt. 52, Oct. 20, 2021 Or.). After GEICO initiated this suit in the District of Kansas, M.O. and Brauner arbitrated the underlying liability tort claim and sought confirmation of that arbitration award in Missouri, which action remains pending on appeal. M.O. filed a separate equitable garnishment lawsuit against GEICO in Missouri.

The Parties thereafter entered into an agreement to transfer this matter for consolidated proceedings before this Court, for a resolution of all coverage, extra-contractual/bad faith, and garnishment issues in one court. Upon transfer to this Court, M.O. brought a counter-claim for equitable garnishment pursuant to Missouri Revised Statutes Section 379.200, and Brauner lodged counter-claims for breach of contract, bad faith, and breach of the duty of good faith and fair dealing. (M.O. Answer & Counterclaim, Dkt. 103; Brauner Answer & Counterclaim, Dkt. 105.)

This Court bifurcated the schedule, with discovery directed to the threshold coverage question to occur first.[4] This motion for summary judgment resolves all of these claims and counter-claims.

**ARGUMENT**

As noted in GEICO's concurrently-filed motion for clarification, there are numerous reasons why Brauner and M.O. cannot establish GEICO's liability for any part of the more than $5 million arbitration award they seek. But for purposes of the instant motion, one simple issue is dispositive of this entire action: GEICO's Auto Policy does not provide coverage for the transmission of HPV merely because that transmission is alleged to have occurred in the insured vehicle. Instead, under the clear text of the Auto Policy, and Kansas authorities interpreting and applying it, the Auto Policy only covers injuries to third party claimants when such injuries arise out of the vehicle's use *as a vehicle*, which does not include its use as a shelter or the situs for the alleged negligent transmission of a sexually-transmitted disease. Because M.O. cannot establish coverage, GEICO must prevail on its declaratory judgment action, and the counter-claims asserted by M.O. and Brauner fail as a matter of law.

## I.     Legal Standard

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because this case was transferred from the District of Kansas, Kansas conflict of law rules apply. *Ferens v. John Deere Co.*, 494 U.S. 516 (1990) (requiring transferee court (here, the Western District of Missouri) to apply same conflict of laws rules as would the transferor court

---

[4] As noted in its concurrently filed motion for clarification, GEICO understands the "threshold coverage issue" is: whether coverage does or does not attach under the Auto Policy's express language assuming sexual activity in the listed vehicle (a 2014 Hyundai Genesis) caused M.O.'s HPV during the Auto Policy period (June 23, 2017 through December 23, 2017). GEICO understands this to be what the Court intended as the "threshold coverage issue" because this is a pure legal question that would potentially resolve all other claims at issue in this lawsuit without the need for substantial fact discovery.

(here, the District of Kansas)); *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941) (requiring federal diversity cases to use forum state's conflict of laws rules).

Under Kansas conflict-of-law rules, the law of the place of contracting governs the terms of the contract. *Safeco Ins. Co. of Am. v. Allen*, 941 P.2d 1365, 1373 (Kan. 1997). Generally, this is the place where the policy is delivered—*e.g.*, the insured's address listed in the policy. *See, e.g., Central Power Sys's & Serv's, Inc., v. Univ. Underwriters Ins. Co.*, 319 P.3d 562, 567 (Kan. Ct. App. 2014). The Auto Policy lists Brauner's Kansas address, and Brauner admits he received this Auto Policy there. (SMF ¶ 28.) It is not clear that either M.O. or Brauner dispute application of Kansas law to the coverage determination; regardless, because Kansas is the forum state (under *Ferens*), a party seeking to apply the law of a jurisdiction other than the forum has the burden to present facts showing another state's law should apply—and M.O. and Brauner cannot do so. Because neither M.O. nor Brauner can establish "sufficient facts to show that other law should apply," this Court must apply Kansas substantive law with respect to the question of coverage under the Kansas Auto Policy. *In re K.M.H.*, 169 P.3d 1025, 1032 (Kan. 2007).[5]

---

[5] Even if Missouri conflict of law rules were to apply, Kansas substantive law would still govern the legal interpretation of this Kansas contract of insurance. Missouri has adopted sections 188 and 193 of the Restatement (Second) of Conflict of Laws (1971) for choice-of-law issues in liability insurance contracts. *Crown Center Redevelopment Corp. v. Occidental Fire & Cas. Co. of North Carolina*, 716 S.W.2d 348, 358 (Mo. Ct. App. 1986); *see also Butterball, LLC v. Great Am. E&S Ins. Co.*, No. 18-5074-CV-SW-BP, 2019 WL 4888625, at *2 (W.D. Mo. July 9, 2019). Section 188 provides that the law of the state with the most significant relationship to the transaction and parties governs. *See* Restatement (Second) of Conflict of Laws § 188(1). It also provides what contacts are considered: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." *See id.* § 188(2). Section 193 states that the "validity of … [the] insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy . . .." By that section's comment b, the location of the insured risk is given greater weight than any other single contact in determining which state's law controls; "in the case of an automobile liability policy, the parties will usually know beforehand where the automobile will be garaged at least during most of the period in question." *Id.* § 193. As the location of the insured risk carries more weight than other factors in the choice of law for insurance contract interpretation, and Brauner himself and the subject vehicle were principally located in Kansas at the relevant time, again Kansas law governs the interpretation of the Auto Policy. (SMF ¶¶ 27-28.)

**II.** **The Court should grant summary judgment to GEICO on its declaratory judgment claim, because the Auto Policy does not cover liability for the alleged negligent transmission of a sexually-transmitted disease in a parked vehicle.**

In cases arising under diversity jurisdiction, a federal court's task is simply to ascertain and apply the applicable state law. *See, e.g.*, *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938). Here, Kansas courts, including the Kansas Supreme Court and Kansas Court of Appeals, have repeatedly awarded summary judgment to an insurer where an alleged injury does not "ari[se] out of the use of a vehicle" as a matter of law.[6] Those authorities—as well as the unambiguous text of the Auto Policy—establish that GEICO is entitled to judgment as a matter of law.

"If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used." *Marshall v. Kan. Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003) [internal citations omitted]. "Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it generally uncertain which one of two or more meanings is the proper meaning." *See, e.g.*, *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 659, 810 P.2d 283 (1991). Whether a policy is ambiguous turns on the pure legal determination by the court of what "a reasonably prudent insured would understand the language to mean." *Id.*; *see, e.g.*, *Short v. Blue Cross & Blue Shield of Kan., Inc.*, 441 P.3d 1058, 1061 (Kan. Ct. App. 2019) (holding extrinsic evidence inadmissible for interpreting unambiguous policy language); *Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Ass'n*, 529 P.2d 171, 179 (Kan. 1974) (calling insurer's subjective view regarding coverage "irrelevant" to the

---

[6] *See, e.g.*, *Evans*, 637 P.2d 491; *see also Sports Unlimited, Inc. v. Lankford Enterprises, Inc.*, 275 F.3d 996, 1000-01 (10th Cir. 2002) (published decisions of the "intermediate appellate court of Kansas" are "authoritative" in diversity cases); *Raines v. Safeco Ins. Co. of Am.*, 2010 WL 11545672, at *4 (W.D. Mo. Mar. 31, 2010) ("The Kansas Court of Appeals is a compelling source of Kansas law.").

policy's interpretation). "All pertinent provisions of an insurance policy must be considered together, rather than in isolation, and given effect." *Short*, 441 P.3d at 1061.

Kansas courts have long recognized that, when auto policies cover liability for injuries "arising out of ownership, maintenance or use" of an auto, they do not apply "merely because a motor vehicle is the situs of an injury" when "the injury does not necessarily arise out of the use of a motor vehicle." *Garrison*, 907 P.2d at 895. Instead, the injury must arise out of the use of the automobile *as an automobile*—and *not*, by way of an archetypal example, as a "shelter." *Evans*, 637 P.2d at 491; *see also Hamidian v. State Farm Fire & Cas. Co.*, 833 P.2d 1007, 1012 (Kan. 1992) ("[f]or an automobile insurer to be liable for an automobile accident, unless the express language of an insurance policy provides otherwise, the automobile must, in some manner, be involved in the accident, and the mere fact that an accident takes place in or near the automobile does not impose responsibility upon the insurer."). As the Kansas Court of Appeals has authoritatively explained, "an injury does not arise out of the 'use' of a vehicle . . . if it is caused by some intervening cause not identifiable with normal ownership, maintenance, and use of the insured vehicle." *Evans*, 637 P.2d 491.

Applying these principles, Kansas courts have made clear that using a vehicle as a shelter for sexual activity does not make an injury caused by that sexual activity one that arises out of the "normal ownership, maintenance, and use" of a vehicle. *Id.*

First, in *Evans*, the Kansas Court of Appeal addressed a fact-pattern involving three individuals sitting in the back of a parked car facing a bonfire. While using the car as shelter from cold, rainy weather, one passenger lit an M-80 firecracker and threw it into the beer glass of a party-goer sitting outside the car, causing an explosion and severe injuries. *Id.* at 493. Seeking insurance coverage, the victim and assailant asserted the injury arose out of the "ownership, maintenance or use" of the insured station wagon on the basis that the station wagon was being

used as a "shelter" when the assailant threw the M-80. *Id.* The Kansas Court of Appeals rejected this argument and entered of summary judgment for the insurer. The court acknowledged the "M-80 was lit inside the vehicle and the defendants might have had difficulty lighting it if no shelter had been available"; however, that incidental use was not enough, as a matter of law, to "furnish the necessary causal relationship between the use of the car and the injuries." *Id.* at 494. *Evans* alone resolves this case: the alleged "use" of Brauner's car as a "shelter" for Brauner to negligently transmit HPV contributed no more to the alleged injuries here than if the sexual activity occurred in any other location—it simply did not involve the use of the vehicle *as* a vehicle.

Ten years later, in *Allied Mut. Ins. Co. v. Patrick*, 819 P.2d 1233, 1235 (Kan. Ct. App. 1991), the Kansas Court of Appeals applied the *Evans* rule to a fact-pattern involving the alleged negligent sexual abuse of a minor in a vehicle, again concluding that the use of the vehicle as a situs for such abuse was not enough to trigger coverage under an auto policy. The Court's analysis turned on the shared term in all auto policies: the word "*auto*." *See id.* at 1235 ("Even if we assume that an accident did occur, the question remains whether it was an 'auto accident'".). The Court cited *Evans* for the "proposition that an incident is not an automobile accident merely because it occurs in an automobile." *Id.* at 1235 (citing *Evans*, 7 Kan. App. 2d 60.). Instead, the "rule … suggested by the *Evans* court" was that "there must be some causal connection between the accident and the *automobile* allegedly involved." *Id.* at 29 [emphasis added]. The court then held that, as in *Evans*, there was "no causal connection between [the perpetrator and victim's] presence in the automobile and the alleged unfortunate injury to [the victim]." *Id.* Like *Evans*, *Patrick* also decides this case: an alleged negligent sexual act in an automobile does not create an injury arising out of the use of an "*auto*" merely because of the "presence" of two people in that auto.

In *Garrison*, the Kansas Supreme Court further explicated this rule. There, a vehicle was being used for a vehicular purpose: to "transport hunters … [and] guns during a hunting trip." *Id.*

While one person was "driving" and the "engine was running," a passenger removed a gun—and the gun, in the process of being removed from the car, discharged. *See id.* The Kansas Supreme Court cited and agreed with *Patrick* and *Evans* that "merely because a motor vehicle is the situs of an injury, the injury does not necessarily arise out of the use of the motor vehicle." *Id.* Unlike in those cases, however, because the "injury occurred while the car was being used to transport dove hunters during a hunting trip"—*i.e.*, the car was being used *as a car* and that use contributed to the injury—the injury was covered. *Id.* at 554; *cf. Carrasco v. Allstate Ins. Co.*, 264 P.3d 1058 (Kan. Ct. App. 2011) (unpublished) (gunshot wounds received in a car did not arise out of the "ownership, maintenance or use" and noting that in *Garrison*, "[q]uite simply, the vehicle was being used *as a vehicle*." (emphasis added)); *Hamidian*, 833 P.2d at 1013 (gunshot wound incurred after exiting a vehicle "did not arise out of the ownership, operation, maintenance or use of a motor vehicle" because the vehicle must have a "greater nexus to the injury than . . . a party being in the wrong place at the wrong time.").

Finally, in *DeWitt*, a woman contracted a venereal disease through consensual sex while on the insured's yacht. No. 69,983, 1994 WL 17120824, at *1, attached hereto as **Ex. P**.[7] There, the pertinent coverage provision did not limit itself to ownership, maintenance or use, but more generally covered any "bodily injury . . . arising out of the yacht." Citing and applying binding authorities including *Evans* and *Patrick*, the court of appeals affirmed the entry of summary judgment in favor of the insurer, explaining "there is no causal connection between the yacht and a venereal disease transmitted during voluntary sexual conduct on the yacht. . . . the yacht was

---

[7] Because the decision is unpublished, it is, under Kansas Supreme Court Rule 7.04(g), non-precedential. Kan. Sup. Ct. R. 7.04(g). It may be cited, however, for its persuasive value. *See id.*; *e.g.*, *Burk v. Unified Sch. Dist. No. 329, Wabaunsee Cnty., Kan.*, 646 F. Supp. 1557, 1563 n.1 (D. Kan. 1986) ("Although Kansas Supreme Court Rule 7.04[] provides that such an unpublished opinion is without value as precedent, we find the court's reasoning persuasive … and applicable to the facts of this case.").

merely the locale for the act causing the injury." *Id.*, at *4. Thus, in *DeWitt*, the Kansas Court of Appeals considered and rejected the very argument M.O. and Brauner make here by holding that transmission of a venereal disease in a vehicle does not "arise out of" that vehicle's use. *Id.*

As these cases make clear, the fact the alleged negligent transmission of HPV occurred in a parked car does not mean that car was being used *as a vehicle*, but was instead the mere situs of the alleged negligence or, at best, being used as a shelter.[8] Accordingly, there is no coverage for Brauner and M.O.'s allegations under the Auto Policy as a matter of law. And indeed, although not necessary to this conclusion, the fact that other sexual activity occurred between M.O. and Brauner outside the vehicle over a period of years illuminates this point. Brauner and M.O. were involved in a multi-year sexual relationship with one another after 2017 and the HPV diagnosis at issue did not occur until October 2018 (SMF ¶ 8), including unprotected sexual activities at M.O.'s house in Kansas City, Missouri (SMF ¶ 2) and at Brauner's house in Kansas a number of times. (SMF ¶ 3.)[9] After the HPV diagnosis, the relationship then continued for another year and a half until their engagement was broken off in May 2020. (SMF ¶ 10.) It was only then that M.O. retroactively blamed Brauner for her October 2018 HPV diagnosis. (SMF ¶ 11.) The connection to the vehicle listed in the Auto Policy is incidental at best and, regardless, sexual activity within

---

[8] Assuming *arguendo* Missouri law applies to this coverage question, the result is the same. Missouri courts, though not addressing such substantially similar fact patterns as Kansas courts, also hold that the use requirement is not satisfied where the vehicle is the mere situs of an alleged tortious act. In *Walden*, for instance, the Missouri Court of Appeals explained that "not every tortious act occurring inside a vehicle constitutes use of that vehicle for imposing liability under an automobile liability policy." *Walden v. Smith*, 427 S.W.3d 269, 277 (Mo. Ct. App. 2014) (dog bite case; rejecting coverage theory wherein vehicle's use was as a shelter for the dog, rather than "consistent with the vehicle's nature as a vehicle"); *see also State Farm v. Flanary*, 879 S.W. 720 (Mo. Ct. App. 1994) (holding that the claimant's injury resulted from the insured's "negligence in his actions as a welder, not from his negligence resulting from the use of the truck."); *Brown v. Shelter*, 838 S.W.2d 148 (Mo. App. 1992) (gunshot case; holding coverage did not attach because the vehicle was merely the "situs" or "locus" for the accidental discharge of the firearm).

[9] The Auto Policy period ended a mere few weeks after the beginning of their relationship. (SMF ¶ 4.)

that vehicle simply cannot be use of the vehicle as a vehicle as required.[10] GEICO is entitled to summary judgment.

III.    **The Court should grant summary judgment to GEICO on its declaratory judgment claim as it relates to the Umbrella Policies, because, since the commencement of this action, M.O. and Brauner have stipulated such policies do not afford coverage here.**

The Parties' stipulation, which was filed in this case at the District of Kansas, states in part: "Brauner and [M.O.] agree neither is seeking nor will seek, in any forum or form, any coverage for Subject Claims under the Umbrella Policies or any other contractual or extra-contractual claims related in any way to the Umbrella Policies arising out of or in any way related to the Subject Claims." (SMF ¶¶ 25–26.) Because the Parties have now stipulated that the Umbrella Policies do not afford coverage for M.O.'s subject liability claim against Brauner, GEICO is entitled to entry of judgment as a matter of law on the portion of its claim for declaratory judgment related to the Umbrella Policies. (SMF ¶¶ 25–26.)

**CONCLUSION**

The Auto Policy does not cover M.O.'s alleged injuries. The insured auto was not being used as an auto when Brauner's alleged conduct supposedly injured M.O.

GEICO therefore respectfully requests this court grant its motion for summary judgment, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By: */s/ Douglas S. Beck*
    Douglas S. Beck, MO #49984
    Sarah Lynn Baltzell, MO #60937

---

[10] Should this case proceed forward, these and other facts illustrate the problems Brauner and M.O. will face proving transmission of HPV actually occurred in the vehicle at all. But for present purposes, they illustrate that Brauner and M.O. were not using the car *as a vehicle* when they engaged in sexual activity—which they engaged in in numerous other non-vehicular locations. Under these alleged facts, the Auto Policy simply does not apply.

W. Clark Richardson, MO #66948
Michael Hayes, MO #71922
2555 Grand Boulevard
Kansas City, Missouri 64108-2613
Telephone: 816-474-6550
Facsimile: 816-421-5547
dbeck@shb.com
slynn@shb.com
wrichardson@shb.com
mhayes@shb.com

J. Max Rosen (*pro hac vice* pending)
Munger, Tolles & Olson L.L.P.
560 Mission Street, 27th Floor
San Francisco, CA 94105
Telephone: 415-512-4000
Max.rosen@mto.com

Cary B. Lerman (*pro hac vice* pending)
Munger, Tolles & Olson L.L.P.
350 South Grand Avenue, 50th Floor
Los Angeles, CA 90071-3426
Telephone: 213-683-9100
Facsimile: 213-683-5163
Cary.lerman@mto.com

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing was filed and served via the Court's electronic filing system on June 24, 2022, upon all counsel of record.

*/s/ Douglas S. Beck*