IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| GEICO GENERAL INSURANCE COMPANY, | )<br>)<br>) |
| and | )<br>) |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 4:22-cv-00082-CV-W-FJG |
| MARTIN BRAUNER, | )<br>) |
| Defendants. | )<br>) |
| AND | )<br>) |
| MARTIN BRAUNER | )<br>) |
| Counter-plaintiff, | )<br>) |
| v. | )<br>) |
| GEICO GENERAL INSURANCE COMPANY, | )<br>)<br>) |
| and | )<br>) |
| GOVERNMENT EMPLOYEES INSURANCE COMPANY, | )<br>)<br>) |
| Counter-defendants, | ) |

## ORDER

Pending before the Court are (1) GEICO Plaintiffs' Motion for Summary Judgment (Doc. No. 116); and (2) Defendant and Counter-Plaintiff Martin Brauner's Motion for Summary Judgment (Doc. No. 157). As an initial matter, the various requests for oral argument (see Doc. Nos. 152, 154, and 157) are **DENIED.**

Additionally, Defendant/Counter-Plaintiff Brauner moves for summary judgment as to various of his counter-claims brought in Doc. No. 105 (seeking summary judgment on duty to defend (Count I), breach of contract (Count III), GEICO's alleged bad faith (Count IV), breach of duty of good faith and fair dealing (Count V), and claim for attorneys' fees (Count VI)). As the Court indicated in its Order granting GEICO Plaintiffs' Motion to Clarify (Doc. No. 133), the "threshold coverage issue" to be addressed in Phase I of this Court's scheduling order (including in the pending motions for summary judgment) is "whether coverage does or does not attach under the GEICO Auto Policy's express language assuming sexual activity in the listed vehicle (a 2014 Hyundai Genesis) caused M.O.'s HPV during the GEICO Auto Policy period (June 23, 2017 through December 23, 2017)." Doc. No. 133, p. 2. The Court further confirmed GEICO's understanding that "all other issues in this lawsuit will be addressed in Phase II, if necessary." <u>Id.</u> Thus, the Court finds that Brauner's motion as to his counterclaims should be denied because it asks for resolution of legal and factual issues reserved for Phase II of this action. As discussed by GEICO in its response to Brauner's motion for summary judgment, no meaningful discovery has occurred to-date on those counterclaims. Accordingly, Brauner's motion for summary judgment is **DENIED** insofar as he requests summary judgment on his counterclaims.

In addition, all parties make clear that the umbrella policy issued to Defendant Brauner does not afford coverage on the claim that M.O. contracted HPV from Brauner. Therefore, summary judgment is **GRANTED** in GEICO's favor on that issue.

The Court will now turn to the parties' arguments on the threshold coverage issue as to the automobile insurance policy.

I.    Facts[1]

---

[1] The Court has omitted conclusions of law and unsupported allegations of fact from its

M.O. and Brauner began a multi-year "continuous" sexual relationship with each other in or around November 2017. The GEICO Auto Policy lists an effective policy period of June 23, 2017, through December 23, 2017. M.O. and Brauner had engaged in sexual activity in Brauner's 2014 Hyundai Genesis at least once as of December 2017. M.O. was diagnosed with HPV sometime in October of 2018.

In November 2020, counsel for M.O. sent a letter to Brauner indicating that "[t]his firm has been retained to represent [M.O.] for personal injuries she suffered as a result of the transmission of the HPV virus by you in your household. . . We are requesting a copy of all applicable insurance policies, including declaration pages and excess/umbrella policies that were in effect during the time period of 2017 through 2020 that may provide indemnity for you." Doc. No. 117, Ex. J. On February 25, 2021, M.O. demanded that GEICO pay "the applicable limits of [$1,000,000]" to resolve her "claims against [Brauner]." She included in her demand letter a proposed state court petition and indicated an intent to file it should GEICO not satisfy her demand. Doc. No. 117, Ex. E. M.O.'s proposed state court petition sought from Brauner damages for alleged negligence and alleged negligent infliction of emotional distress. In the February 25, 2021 demand letter and proposed petition, M.O. alleges that she and Brauner entered into a sexual relationship in November 2017 and early December 2017, including that the two "engaged in unprotected sexual activities, including intercourse, in Defendant [Brauner's] home and in his 2014 Hyundai Genesis car." Doc. No. 117, Ex. E. In the February 25 demand letter and proposed petition,

---

statement of facts. In addition, the Court has omitted immaterial facts from its statement of facts. Furthermore, many of the "facts" asserted by M.O. and Brauner come from the state court judgment confirming an arbitration award. That judgment was recently vacated by the Missouri Supreme Court, which remanded the related state court proceedings to the trial court in order to allow GEICO to intervene. See Doc. No. 164, Ex. A. Accordingly, the Court does not consider any "facts" derived from that now-vacated judgment.

M.O. alleges that Brauner negligently failed to tell M.O. that he was infected with anogenital human papillomavirus (HPV), and that he failed to use adequate protection and take proper precautions to prevent its transmission to her. Doc. No. 117, Ex. E. Eventually, GEICO denied the demand for coverage of M.O.'s subject liability claim.

Following GEICO's denial, M.O. and Brauner entered into a Missouri Section 537.065 agreement, wherein M.O. and Brauner agreed to a later arbitration under pseudonyms. See Martin Brauner Affidavit, Doc. No. 154, Ex. 15. M.O. and Brauner arbitrated M.O.'s subject liability claim on or about May 17, 2021. The next day, May 18, 2021, the arbitrator entered an award to M.O. of $5,200,000.00, finding in part that "there was sexual activity in [Brauner's] automobile in November/December 2017" that "directly caused, or directly contributed to cause, M.O. to be infected with HPV." Doc. No. 117, Ex. M.[2]

GEICO issued two types of policies to Brauner that were effective during the relevant time period. The first was a Personal Umbrella Policy, Policy No. P7196540, which was effective from November 26, 2016 to November 26, 2017, and renewed for a policy period of November 26, 2017 to November 26, 2018. However, the parties have stipulated that the Umbrella Policies do not afford coverage for M.O.'s liability claim against Brauner, given that the Umbrella Policies contain a specific exclusion for the negligent transmission of a communicable disease by an insured. The second type of policy issued to Brauner during the relevant time period is the subject Kansas Family Automobile Insurance Policy, No. 4133-84-43-91, which was effective June 23, 2017 through December 23, 2017, and which

---

[2] Notably, GEICO indicates that if its motion for summary judgment is denied, it plans to contest the validity of the arbitrator's findings and whether it can be bound by such findings since it was not permitted to participate in (nor was it timely informed of) the arbitration. In addition, the Court notes that the Circuit Court judgment confirming the arbitration award was vacated by the Missouri Supreme Court. See Doc. No. 164, Ex. A.

lists Brauner's 2014 Hyundai Genesis. Doc. No. 117, Ex. K. Brauner received a copy of the Kansas Family Automobile Insurance Policy (hereafter "Auto Policy") at his Kansas address. The Auto Policy has a $1,000,000 limit for all bodily injury claims. Doc. No. 117, Ex. K, p. 3.

In Section I ("Liability Coverages"), the Auto Policy states the following, in part:

> **SECTION I – LIABILITY COVERAGES**
>
> *Your* **Protection Against Claims From Others**
>
> \*\*\*
>
> **LOSSES WE WILL PAY FOR *YOU* UNDER SECTION I**
>
> Under Section I, we will pay damages which an ***insured*** becomes legally obligated to pay because of:
>
> **1. *bodily injury***, sustained by a person, and:
>
> **2.** damage to or destruction of property, arising out of the ownership, maintenance or use of the ***owned auto*** or a ***non-owned auto***. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

Doc. No. 117, Ex. K, p. 7 of 33 (emphasis in original). Section I defines "insured" as "a person or organization described under PERSON INSURED," in this case, Brauner. See id. Section I defines "bodily injury" as "bodily injury to a person including resulting sickness, disease, or death." Id. Section I defines "owned auto" as, among other things, "a vehicle described in this policy for which a premium charge is shown for these coverages," which, in this case, is the listed 2014 Hyundai Genesis. See id. Section I defines "you" and "your" as "the policyholder named in the declarations or his or her spouse if a resident of the same household." Id.

In Section VI ("Amendments and Endorsements"), GEICO states it will pay certain limited benefits "incurred because of ***bodily injury*** sustained by an ***eligible injured person***

caused by an accident arising out of the ownership, operation, maintenance or use of a *motor vehicle*." Doc. No. 117, Ex. K, p. 20. In the Exclusions of Section VI, GEICO precludes coverage for "*bodily injury* to *you* or any *relative* while *occupying* any *motor vehicle* owned by *you* which is not an *insured auto*" or "*bodily injury* to any person if that person [] caused such *bodily injury* to such person intentionally." Id. Section VI adopts Section I's definition of *bodily injury*. Id. Section VI defines "*eligible injured person*" as, among other things, "any other person who sustains *bodily injury* while *occupying* the *insured auto* or through direct physical contact with the *insured auto* while not *occupying* any *motor vehicle*." Id. Section VI defines "*insured auto*" as a *motor vehicle* which *you* own and with respect to which; (a) the bodily injury liability insurance of the policy applies and for which a specific premium is charged; and (b) *you* are required or have elected to maintain security required under the Kansas Automobile Injury Reparations Act." Id. Section VI defines "*motor vehicle*" as a self-propelled vehicle of a kind required to be registered in the State of Kansas, including any trailer, semi-trailer, or pole trailer designed for use with such vehicle, but such term does not include a motorized bicycle. Id. at p. 21.

## II.    Standard

Summary judgment is appropriate if the movant demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 327, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). The facts and inferences are viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–90, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party must carry the burden of establishing both the absence of a genuine issue of material fact and that such party is entitled to judgment as a matter of law. Matsushita, 475 U.S. at 586–90.

A nonmoving party must establish more than "the mere existence of a scintilla of

evidence" in support of its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

> The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citations and quotations omitted).

Under Kansas conflict-of-law rules, which apply in this matter, the law of the place of contracting governs the terms of the contract. Safeco Ins. Co. of Am. v. Allen, 941 P.2d 1365, 1373 (Kan. 1997). Generally, this is the place where the policy is delivered. See, e.g., Central Power Sys's & Serv's, Inc., v. Univ. Underwriters Ins. Co., 319 P.3d 562, 567 (Kan. Ct. App. 2014). In this instance, the policy was delivered to Brauner in Kansas; therefore, the substantive law of the state of Kansas governs the interpretation of the policy's language.

### III. Analysis

#### A. GEICO Plaintiffs' Motion for Summary Judgment (Doc. No. 116)

Under Kansas law, "If the language in an insurance policy is clear and unambiguous, it must be construed in its plain, ordinary, and popular sense and according to the sense and meaning of the terms used." Marshall v. Kan. Med. Mut. Ins. Co., 73 P.3d 120, 130 (Kan. 2003) [internal citations omitted]. Whether a policy is ambiguous turns on the pure legal determination by the court of what "a reasonably prudent insured would understand the language to mean." Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co., 810 P.2d 283 (Kan. 1991). Where the terms of a policy of insurance are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable

to the insured must prevail. See Patrons Mut. Ins. Ass'n v. Harmon, 732 P.2d 741 (Kan. 1987).

Here, GEICO asserts that it cannot be liable under the contract of insurance because Brauner and M.O. would need to prove that the transmission of HPV constituted a "bodily injury . . . arising out of the ownership, maintenance or use of" an automobile. See Policy, Doc. No. 117, Ex. K, p. 7 of 33. GEICO argues that relevant Kansas precedent shows that the transmission of an STD is not a covered use of the vehicle. In response, M.O. and Brauner argue (1) the Policy is poorly drafted and under its terms coverage for "bodily injury" does not require the injury "aris[e] out of the ownership, maintenance or use of" an automobile; and (2) sexual contact is a recognized and common use of a vehicle, and therefore ought to be covered. The Court considers both of these arguments, below.

    1.    Must the injury arise out of the ownership, maintenance or use of the subject auto?

Defendants M.O. and Brauner argue that the GEICO policy at issue in this case was sloppily drafted, and, because of that, covers losses for "bodily injury" without requiring that the injury arise out of an "accident," "auto accident," "collision," or the "ownership, maintenance or use" of the auto. M.O. and Brauner note that the relevant language used in the subject policy is as follows:

> **LOSSES WE WILL PAY FOR *YOU* UNDER SECTION I**
>
> Under Section I, we will pay damages which an ***insured*** becomes legally obligated to pay because of:
>
> **1. *bodily injury***, sustained by a person, and:
>
> **2.** damage to or destruction of property, arising out of the ownership, maintenance or use of the ***owned auto*** or a ***non-owned auto***. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

Policy, Doc. No. 117, Ex. K, p. 7 of 33 (emphasis in original).

M.O. and Brauner argue that the punctuation and spacing used in these paragraphs means that for property damage or destruction claims to be covered, they must arise out of the ownership, maintenance or use of the owned auto; however, for bodily injury claims, no such limitations apply. M.O. and Brauner argue that the language in the subject policy is non-standard for the insurance industry, and that GEICO has subsequently modified the paragraph spacing in its more recent insurance contracts to the below:

> **LOSSES WE WILL PAY FOR *YOU* UNDER SECTION I**
>
> Under Section I, we will pay damages which an ***insured*** becomes legally obligated to pay because of:
>
> **1.** ***bodily injury***, sustained by a person, and:
>
> **2.** damage to or destruction of property,
>
> arising out of the ownership, maintenance or use of the ***owned auto*** or a ***non-owned auto***. We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit.

Doc. No. 152, Ex. 9, p.4, Certified copy of 2021 GEICO Kansas Family Automobile Insurance Policy – A30KS (02-21). Defendants M.O. and Brauner argue that this amounts to a significant change in the policy, and that, at best, the policy that was in effect when M.O. was injured is ambiguous such that the Court should interpret it so that she would not need to demonstrate that the injury arose out of the ownership, maintenance, or use of Brauner's vehicle. M.O. and Brauner further argue that courts in other jurisdictions have found this policy language to be vague and confusing. See McGehee v. Benton, No. 2006 CA 2335, 2007 WL 2685582 (La. Ct. App. Sept. 14, 2007).[3]

---

[3] M.O. and Brauner also argue that a Fifth Circuit case demonstrates that the GEICO policy language is ambiguous. See GEICO Insurance Co. v. Nancy White, 339 Fed. Appx. 394 (5th Cir. 2009). This Court has reviewed White, however, and finds that the Fifth Circuit did

9

Finally, M.O. and Brauner argue that GEICO used specific language in parts of the Policy other than Section 1, for example (1) in Section IV, uninsured motorist coverage, where coverage is provided for bodily injury caused by an accident arising out of the use of the auto; (2) in Section VI, amendments and endorsements, part one, personal injury protection coverage, bodily injury must be "caused by an accident arising out of the ownership, operation, maintenance or use of a motor vehicle; (3) in Section II, auto medical payments coverage, there is a specific exclusion for coverage of an insured while occupying a vehicle as a residence or premises, which is not present in Section 1; (4) also in Section II, the word "collision" is defined and required for coverage, and defendants argue GEICO could have required a "collision" for coverage in Section I but chose not to; and (5) the Umbrella policy has an exclusion for the transmission of a communicable disease, which again is not present in the automobile policy. Defendants argue that the limitations in these paragraphs would have been unnecessary had GEICO included such limitations Section I.

In its reply suggestions, GEICO argues that the defendants' suggestions in opposition seeming concede that the alleged transmission of HPV did not arise out of a use of an automobile. GEICO argues that the interpretation advocated by M.O. and Brauner seemingly reads out of the policy the need for an automobile at all – interpreting the auto policy as instead a general liability policy covering all bodily injuries regardless of their connection to a vehicle. GEICO argues that this Court should not adopt such an absurd interpretation of the policy. Instead, GEICO notes that the subject policy <u>must</u> require a connection with an automobile for the most obvious of reasons – the policy itself is an auto insurance policy, and all such policies require a causal connection between an auto and

---

not make any determination whatsoever that the language used in the GEICO policy was ambiguous; instead, the Fifth Circuit and the court below both concluded that they did not need to reach the merits of the parties' proposed contract interpretation. <u>See</u> <u>id.</u> at 396 n.1.

the injuries for which coverage is sought. See e.g., Allied Mut. Ins. Co. v. Patrick, 819 P.2d 1233, 1235 (Kan. Ct. App. 1991) (requiring such a causal connection between an automobile and an accident based on the word "auto"). The Supreme Court of Kansas has explained: "[f]or an automobile insurer to be liable for an automobile accident, unless the express language of an insurance policy provides otherwise, the automobile must, in some manner, be involved in the accident, and the mere fact that an accident takes place in or near the automobile does not impose responsibility upon the insurer." Hamidian v. State Farm Fire & Cas. Co., 833 P.2d 1007, 1012 (Kan. 1992) (citing Patrick, 819 P.2d at 1233-35). There is absolutely no indication from the express language of the subject GEICO policy that an automobile is not necessary for there to be coverage of bodily injury claims.

Instead, as GEICO advocates, this insurance policy should be read "as a whole" in order to determine whether it is ambiguous. Universal Underwriters Ins. Co. v. Hill, 955 P.2d 1333, 1337 (Kan. Ct. App. 1998). "[C]ourts should not strain to create an ambiguity where, in common sense, there is none." First Fin. Ins. Co. v. Bugg, 962 P.2d 515, 519 (Kan. 1998). Only if application of basic rules of contract interpretation fail to make the contract's meaning clear to a reasonably prudent insured can a court find ambiguity. Wood v. Hatcher, 428 P.2d 799, 803 (Kan. 1967); Jones v. Reliable Sec. Incorporation, Inc., 28 P.3d 1051, 1059 (Kan. Ct. App. 2001). Here, GEICO argues that no reasonably prudent insured could possibly believe that the auto policy covers all bodily injury no matter where or how it occurs. Instead, GEICO argues that in the context of the policy as a whole is it clear that bodily injury claims must involve the ownership, maintenance or use of a covered auto. Context clues that also support a finding that an automobile must bear a relationship with covered injuries include: (1) the title of the policy ("Kansas Family Automobile Insurance Policy"), (2) the provisions regarding insureds (who are persons "with regard to

an owned auto" or a "non-owned auto"), (3) the provisions applicable to two or more autos, and (4) Section V "Premium," which explains that the policy premiums bear a relationship with the type of auto covered. See generally Doc. No. 117, Ex. K. These provisions do not support the idea that the policy is a general liability policy covering all bodily injuries caused by an insured, regardless of their connection with an automobile. Even if this Court were to find that the policy is ambiguous (which, to be clear, it is not), the Court could not adopt the interpretation advocated for by M.O. and Brauner because such interpretation would be unreasonable. The Court will not convert an automobile policy into a general liability policy based on such thin analysis.

Furthermore, to the extent that M.O. and Brauner turn to the policy language to support their argument that only property damage claims require a relationship between the ownership, maintenance, or use of a covered auto, GEICO notes that M.O. and Brauner have ignored the next few sentences modifying paragraph 2 – "We will defend any suit for damages payable under the terms of this policy. We may investigate and settle any claim or suit." See Doc. No. 117, Ex. K, p. 7 of 33. Thus, if M.O. and Brauner's proposed interpretation of the language was accurate, GEICO would not have a duty to defend, investigate or settle claims for bodily injury, either.

Finally, GEICO notes that the Kansas Court of Appeals has reviewed language identical to that in the subject policy in GEICO Gen. Ins. Co. v. Hanzlik, 92 P.3d 1121, 1126 (Kan. Ct. App. 2004). The Court of Appeals found that when the subject vehicle was not an "owned auto" or "non-owned auto," bodily injury caused to another party was not covered. Id. at 1124–25. If the Court of Appeals had adopted the interpretation advocated for by M.O. and Brauner in the present matter, whether the vehicle in Hanzlik was "owned" or "non-owned" would not have mattered, and the bodily injury would have been covered by the

policy as a general liability policy. Therefore, given that Kansas courts have come to the opposite conclusion as the out-of-state cases cited by M.O. and Brauner, the Court finds that Kansas law should control, the policy should be found to be unambiguous, and the policy must require at the very least that M.O. and Brauner's claims involve the ownership, maintenance or use of a covered auto.

Therefore, for all the foregoing reasons, the Court concludes that the policy unambiguously requires M.O. and Brauner to demonstrate that the bodily injury alleged in this matter involves that ownership, maintenance, or use of Brauner's automobile.

2. Is transmission of an STD a covered use of the subject auto?

Given that this Court has found that the subject policy requires a claim involving the ownership, maintenance, or use of the covered auto, the Court next turns to whether sexual activity in the listed vehicle (a 2014 Hyundai Genesis) qualifies as such a claim. GEICO notes that under Kansas law, the fact that an automobile is the situs of an injury does not necessarily mean that the injury arises from the use of that automobile. See Garrison v. State Farm Mutual Auto Ins. Co., 907 P.2d 891, 895-96 (Kan. 1995); Farm Bureau Mut. Ins. Co., Inc. v. Evans, 637 P.2d 491, 493 (Kan. Ct. App. 1981); see also United Servs. Auto. Ass'n v. DeWitt, No. 69,983, 1994 WL 17120824, at *4 (Kan. Ct. App., Mar. 4, 1994) (finding in an unpublished decision that transmission of a sexually transmitted disease on a yacht did not constitute a "bodily injury … arising out of the yacht" as "there is no causal connection between the yacht and a venereal disease transmitted during voluntary sexual conduct on the yacht"). Instead, Kansas courts have held that "For an automobile insurer to be liable for an automobile accident, unless the express language of an insurance policy provides otherwise, the automobile must, in some manner, be involved in the accident, and the mere fact that an accident takes place in or near the automobile does not impose

responsibility upon the insurer." Hamidian, 833 P.2d at 1012. Here, GEICO argues that the auto at issue in this case was not being used as a vehicle when the transmission of HPV occurred; instead, it was the mere situs of the alleged negligence, or at best was being used as a shelter (which is also an insufficient use under Kansas law to trigger coverage under Kansas auto policies).

In response, Defendants M.O. and Brauner first assert that the cases cited by GEICO are inapplicable because they involve automobile liability policies that extend coverage only for incidents where the bodily injury arose out of the ownership, maintenance, or use of the insured vehicle. Of course, as the Court has extensively detailed above, the subject GEICO auto policy requires that the bodily injury arise out of the ownership, maintenance, or use of the vehicle.

Only in Brauner's reply suggestions to his own motion for summary judgment does either defendant argue that the alleged transmission of HPV is a covered use of an automobile. See Doc. No. 163. Brauner, at this late juncture, argues that the HPV was contracted as a result of a common, foreseeable, automobile use – sexual relations in a car. Defendant Brauner argues that the injury here is a result of a natural and reasonable incident or consequence of the use of the involved vehicle, and Kansas law requires no more than a minimal causal connection between the use of the vehicle and the injury. See Garrison, 907 P.2d at 895 (finding a sufficient causal connection where the vehicle had been used to transport hunters and a gun discharged injuring a party). Brauner argues that "people have been generally known to have used vehicles as a venue for sexual relations dating back to the invention of the automobile and if GEICO wanted to exclude coverage for sex in a car, it could have done so." Doc. No. 163, p. 4.[4]

---

[4] Defendant Brauner also argues that the use of a car for consensual sex is an activity that

14

Upon review of the parties' arguments, the Court finds that consensual sexual relations inside a car do not constitute a "use" of the automobile within the meaning of the subject policy. If the Court applied a mere "foreseeability" concept such as what Brauner advocates for in his reply suggestions to his summary judgment motion, all manner of injuries would become covered injuries despite having no real relationship between the use of an auto as an auto. Here, there is no real causal connection between the transmission of HPV and Brauner's vehicle; instead, the vehicle is the mere situs of the transmission of venereal disease. Accordingly, the Court finds that summary judgment must be granted in GEICO's favor.

B. Brauner's Motion for Summary Judgment (Doc. No. 157)

Given the Court's findings, above, that GEICO's policy does not afford coverage for the injuries alleged by M.O. and Brauner, the Court **DENIES** Brauner's motion for summary judgment (Doc. No. 157) in full.

IV. Conclusion

Therefore, for the foregoing reasons, (1) GEICO Plaintiffs' Motion for Summary Judgment (Doc. No. 116) is **GRANTED**; and (2) Defendant and Counter-Plaintiff Martin Brauner's Motion for Summary Judgment (Doc. No. 157) is **DENIED**. Declaratory judgment is granted in GEICO's favor, and the Court finds that GEICO has no duty under the subject policies to defend or indemnify Brauner for the third-party bodily injury claim asserted by M.O. See Doc. No. 102 (Third Amended Complaint for Declaratory Judgment). As this

---

50% or more American adults have engaged in. Doc. No. 163, p. 5 (citing Cindy Struckman-Johnson, Kayla Nalan-Sheffield, & Samuel Gaster, *Sexual Behavior in Parked Cars Reported by Midwestern College Men and Women,* The Journal of Sex Research, 54(8), 1064-1076 (2017) (attached as Ex. A to Doc. No. 163). After reviewing that article, which provides the results of an anonymous survey of a mere 195 men and 511 women at a small midwestern university, the Court is dubious that such study stands for the broad proposition asserted by Defendant Brauner that 50% or more of all American adults have engaged in such behavior.

Order resolves all claims present in the Third Amended Complaint (Doc. No. 102), and without coverage all claims present in Brauner's counterclaim fail (see Counterclaim, Doc. No. 105, pp. 8-19), the Clerk's office is directed to enter final judgment forthwith.

    **IT IS SO ORDERED**.


Date:  <u>March 10, 2023</u>                                  **S/ FERNANDO J. GAITAN, JR.**
Kansas City, Missouri                    Fernando J. Gaitan, Jr.
                                                              United States District Judge